David S. PAO, M.D.

v.

HOLY REDEEMER HOSPITAL and James E. Gallagher, Jr., et al., Directors of Holy Redeemer Hospital and Richard E. Goldberg, M.D.

Civ. A. No. 81–2918.

United States District Court, E. D. Pennsylvania.

Aug. 27, 1982.

Judith G. Eagle, Bethesda, Md., Robert McL. Boote, Philadelphia, Pa., for plaintiff.

Michael C. Hemsley, James Lewis Griffith, Philadelphia, Pa., for defendant.

## OPINION

LOUIS H. POLLAK, District Judge.

This is an action to recover damages and to obtain equitable relief in which plaintiff, a physician, claims that his civil rights were violated when the Hospital and its officers discriminatorily denied his application for staff privileges at the Hospital, and also that defendants' conduct breached the federal antitrust laws and Title VII. Plaintiff's amended complaint asserts claims under § 1 of the Sherman Antitrust Act, under 42 U.S.C. §§ 1981, 1983 and 1985(3), and under Title VII; and pendent claims under state contract and tort law. The defendants have moved to dismiss the plaintiff's claims. Thus, the questions to be considered concern the sufficiency of the amended complaint.

Plaintiff is Dr. David Pao, a United States citizen of Chinese ancestry and race. He received his M.D. from Columbia University in 1968; completed a residency in ophthalmology; worked in 1974–76 in the Army as a retinal surgeon; and is a Board-certified ophthalmologist.

The principal defendant is the Holy Redeemer Hospital, a non-profit Pennsylvania organization. In addition, the complaint names James E. Gallagher, Jr., a member of the Hospital's Board of Directors, and Dr. Richard Goldberg, an ophthalmologist and a member of the Hospital medical staff.

The heart of plaintiff's complaint appears to be his allegations concerning repeated denials by the Hospital of his application for staff privileges at Holy Redeemer. The plaintiff concedes that he had such privileges at other hospitals in the area, but asserts that the Hospital's denial of privileges caused financial injury to him. Basically, staff privileges permit a doctor to admit his private patients to the hospital for medical treatment and to use the facilities of the hospital, such as operating rooms, x-rays, etc., in treating his patients.

Plaintiff first applied for privileges in August, 1977 and was rejected in January, 1978. He alleges that internal opposition from Dr. Goldberg was the principal reason for the denial. Plaintiff filed a second application in February, 1978 and was again rejected in November, 1978. Amended Complaint ¶¶ 16, 18 and 20. The Hospital cited overcrowding and that plaintiff had sufficient other admissions sources at other hospitals as the grounds for the denial. Amended Complaint ¶ 25. Plaintiff also alleges that at about the same time he was applying, another ophthalmologist named Dr. Lanning (an associate of Dr. Goldberg) was granted staff privileges. Amended Complaint ¶¶ 26–28. Plaintiff then appealed the rejection pursuant to Hospital procedures, but was unsuccessful. It is not clear from the complaint at what date this appeals procedure was completed but the plaintiff filed a charge with the EEOC on October 12, 1979 claiming that the most recent discrimination took place on April 25, 1979—presumably the date on which the Hospital's appeals procedure affirmed the denial of privileges. The EEOC terminated its investigation without initiating a civil action against defendant and sent plaintiff a "right to sue" letter on April 23, 1981. Amended Complaint ¶¶ 40 and 53. Finally, in May, 1980, plaintiff made a third application to the Hospital and was rejected in July, 1981, ostensibly because of overcrowding and because of plaintiff's other admissions privileges at other area hospitals.

Plaintiff's substantive allegations assert that (1) Dr. Goldberg and the Hospital conspired to further their financial interests by

restricting the number of physicians at Holy Redeemer, ¶ 18; (2) Dr. Goldberg and the Hospital discriminated against him on the basis of his Chinese ancestry and race in denying plaintiff's application, ¶ 40; (3) defendants failed to provide adequate and fair appeals procedure. Plaintiff also asserts that the denial of staff privileges at the Hospital injures his ability to practice his profession because (a) Holy Redeemer is often the most convenient hospital for his patients; (b) the Hospital contains special ophthalmological equipment which he needs to provide comprehensive treatment to his patients; and (c) he has lost patients due to the lack of staff privileges. ¶¶ 35–37. His complaint seeks compensatory damages, attorney's fees and costs and injunctive relief.

On March 17, 1982, plaintiff's complaint was dismissed without prejudice to the filing of an amended complaint. On April 6, 1982, the plaintiff filed his Amended Complaint with the court. And on April 19, 1982 the defendants Holy Redeemer Hospital, James E. Gallagher, Jr. and Richard E. Goldberg, M.D. moved this court to dismiss the plaintiff's amended complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. ANTITRUST CLAIM

In moving to dismiss plaintiff's claim under section 1 of the Sherman Act, defendants contend both that plaintiff has failed to allege sufficient facts to establish subject matter jurisdiction and that the complaint fails to state a claim upon which relief may be granted. I will first address the jurisdictional question and then consider the substantive sufficiency of plaintiff's complaint.

Section 1 of the Sherman Act prohibits "every contract, combination ... or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Accordingly, to establish federal jurisdiction under the Act, the defendant's conduct must involve activities that are either in the flow of interstate commerce or "while wholly local in nature, nevertheless substantially affect interstate commerce." *McLain v. Real Estate Bd. of*

*New Orleans,* 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980). *See Harold Friedman, Inc. v. Thorofare Markets, Inc.,* 587 F.2d 127, 132 (3d Cir. 1978); *Cordova & Simonpietri Ins. Agency v. Chase Manhattan Bank,* 649 F.2d 36, 44 (1st Cir. 1981). The parties agree that the narrower "in commerce" standard cannot be satisfied in this case and that the plaintiff has sought to establish jurisdiction only under the broader "affecting commerce" test.

However, the parties have disagreed sharply over the precise character and scope of this latter jurisdictional test. Briefly, Holy Redeemer Hospital argues that subject matter jurisdiction may only be found where a defendant's allegedly unlawful conduct has a substantial effect on interstate commerce. By contrast, plaintiff has insisted that the specific effect of the allegedly unlawful conduct is irrelevant; instead, a showing that a defendant's general business activities substantially affect interstate commerce is sufficient to satisfy the "affecting commerce" standard. This dispute between the parties is mirrored by a corresponding conflict among the circuit courts which have considered the problem. *Compare Crane v. Intermountain Health Care,* 637 F.2d 715 (10th Cir. 1981) (holding that a connection between the alleged restraint and interstate commerce must be shown to establish jurisdiction) *with Western Waste Services v. Universal Waste Control,* 616 F.2d 1094 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980) (holding that an assertion that defendant's general business activities affected interstate commerce was sufficient).

The conflict among the circuits is rooted in discrepant readings of the Supreme Court's opinion in *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). Prior to *McLain,* it had been well established that to demonstrate subject matter jurisdiction under the Sherman Act the plaintiff must be able to show that the defendant's allegedly unlawful conduct had a substantial effect on interstate commerce. *See Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S.

738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed.2d 338 (1976); *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 195, 95 S.Ct. 392, 398, 42 L.Ed.2d 378 (1974); *Burke v. Ford,* 389 U.S. 320, 321, 88 S.Ct. 443, 444, 19 L.Ed.2d 554 (1967); *Mandeville Island Farms v. American Crystal Sugar Co.,* 334 U.S. 219, 234, 68 S.Ct. 996, 1005, 92 L.Ed. 1328 (1948). However, the *McLain* Court in discussing the "affecting commerce" standard gave some signs of having altered this well-settled formula. Given the uncertainty which surrounds this issue it is worth quoting the Court's discussion in full:

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. <u>Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful.</u> The validity of this approach is confirmed by an examination of the case law. If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect. This is not the rule of our cases. A violation may still be found in such circumstances because in a civil action under the Sherman Act, liability may be established by proof of either an unlawful purpose or an anticompetitive effect.

444 U.S. at 242–43, 100 S.Ct. at 509–10 (emphasis added and citations omitted).

■ Plaintiff here and the Ninth Circuit in the *Western Waste Services* case relied upon the underscored language, interpreting this to mean that the Supreme Court had abandoned the long-standing requirement of a nexus between the alleged restraint and interstate commerce. But this interpretation of *McLain* builds a taller edifice than the underscored language will support: First, the Court did not state that

it was abandoning the earlier cases and in fact the decision cites those earlier opinions with approval. *See* 444 U.S. at 241–43, 100 S.Ct. at 508–09. Moreover, later in the opinion, the Court noted that the establishment of federal jurisdiction in a Sherman Act case requires "that respondents' activities which allegedly have been infected by a price-fixing conspiracy be shown 'as a matter of practical economics' to have a not insubstantial effect on interstate commerce." *Id.* at 246, 100 S.Ct. at 511 (citing *Hospital Bldg. Co. v. Rex Hospital*). The opinion taken as a whole seems to leave the jurisdictional test essentially as it was: to establish subject matter jurisdiction, a plaintiff must show that the defendant's allegedly unlawful conduct has as a matter of practical economics a not insubstantial effect on interstate commerce. All that *McLain* emphasized is that a plaintiff need not make a "particularized showing" that as a matter of *fact* the defendant's alleged restraint had a substantial impact upon interstate commerce. The *McLain* Court stressed that requiring an evidentiary showing of actual effects on interstate commerce would impose a too stringent standard. Instead, a test framed in terms of probable effects on interstate commerce based on the logic of practical economics would be sufficient. This is the view of *McLain* that has been adopted by the First and Tenth Circuits, *see Cordova & Simonpietri Ins. Agency v. Chase Manhattan Bank, supra,* 649 F.2d at 45; *Crane v. Intermountain Health Care, supra,* 637 F.2d at 724, by former Chief Judge Lord of this Court, *Cardio-Medical Associates v. Crozier-Chester Medical Center,* 536 F.Supp. 1065, 1075–76 (E.D. Pa.1982), and by Professor Areeda in *Antitrust Law,* ¶ 232.1c at 94 (1982 Supp.).

■ Since the jurisdictional basis of plaintiff's claim has been attacked, I have considered the affidavit submitted by plaintiff as well as the pleadings. After considering this affidavit, I have concluded that it satisfies, albeit only marginally, the jurisdictional standard discussed earlier. The affidavit asserts that the alleged restraint—restricting access to hospital staff

**490**

privileges—has had a "not insubstantial" effect on activities affecting interstate commerce. The relevant interstate activities said to have been adversely affected by defendant's conduct include the rendering of medical services by plaintiff to out-of-state patients, his receipt of revenues from out-of-state sources such as insurance companies and Medicare, and his purchases of medical supplies and equipment from out-of-state suppliers. *See* Affidavit of David Pao, M.D. ¶¶ 2–7 (May 17, 1982). It may well be that plaintiff would be unable to prove these assertions at trial or that the total amounts involved, once proved, would show that plaintiff's case presents only a trivial claim. But plaintiff does appear to have barely satisfied the very liberal jurisdictional prerequisites set forth by the Court in *McLain*. In reaching this conclusion, I do not depart from the principles outlined in Chief Judge Lord's thoughtful opinion in *Cardio-Medical Associates, supra.* Indeed, I have followed his view of *McLain* and have been guided by his delineation of the appropriate jurisdictional standard. The difference in the result I reach here is explained simply by a comparison of the factual allegations in the instant case with those in *Cardio-Medical.* Here, as explained above, plaintiff has in his affidavit at least referred to particular interstate activities which are said to have been adversely affected by the alleged restraint; by contrast, in *Cardio-Medical,* the plaintiffs had wholly failed to allege any activities in interstate commerce which were affected by the defendant's allegedly unlawful conduct.

I turn now to consider defendant's motion pursuant to Rule 12(b)(6) to dismiss for failure to state a claim. Here, I find that plaintiff's complaint is fatally deficient in several respects.

An initial difficulty is that the complaint is drafted in such conclusory terms that the elements of a Sherman Act claim appear, if at all, only in vague silhouette. Specific factual allegations relevant to establishing a violation of the Sherman Act are almost wholly lacking.

In general, to establish a Sherman Act § 1 violation, five elements must be shown: (a) defendant's unlawful activity must be in or must affect interstate commerce; (b) the activity must be performed by two or more persons or entities (a single entity acting alone or through its officers can not be liable for conspiracy); (c) there must be an agreement or concerted action; (d) the concerted action must be in restraint of trade or commerce; and (e) the restraint must be unreasonable or constitute a *per se* violation of the Act. *See* 2 E. Kintner, *Federal Antitrust Law,* § 9.1 at 5 (1980).

Therefore, to survive dismissal in the context of a hospital staff privileges case, a plaintiff would have to allege that a group of plaintiff's competitors in the medical community had entered an agreement or acted in order to exclude him from access to hospital facilities necessary to his practice. And this assertion would have to be coupled with a proffered showing that the purpose or the effect of the conspirators' conduct was in some sense anticompetitive. For example, it might be shown that the conduct tended to reduce the number of physicians who could provide particular services within a relevant market area and that this restraint in turn had the effect of reducing the flow of out-of-state patients, revenues and purchases. *Cf. Robinson v. Magovern,* 521 F.Supp. 842, 901–920 (W.D. Pa.1981). This sketch of a paradigmatic case asserting a Sherman Act violation in the hospital staff privileges area is loosely analogous to cases concerned with refusals to deal or group boycotts. In those cases, as in this situation, liability is predicated on the assertion that the defendant conspirators are attempting to exclude a potential competitor from the relevant market. The antitrust laws are at least arguably implicated because by preventing a plaintiff physician from furnishing medical services to patients within a specified market, the conspirators insulate themselves to that extent from potential competition and thereby distort the normal market mechanism. *Cf. Doctors, Inc. v. Blue Cross of Greater Philadelphia,* 490 F.2d 48 (3d Cir. 1973); *Klor's,*

*Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

■ While the model sketched above is hardly definitive, it provides a rough outline of the minimum requirements to state a Sherman Act § 1 claim. Plaintiff's complaint does not provide even these minimal elements. Plaintiff asserts in a conclusory fashion that defendant's decision to deny him staff privileges constituted an unlawful restraint of trade in violation of § 1, but the complaint never specifies the factual elements necessary to a finding of liability under the Act. First, the nature, formation and membership of the conspiracy is not identified. Second, the relevant aspects of interstate commerce affected by the alleged restraint are set forth only in the affidavit and not in the complaint. Third, there are no specific factual allegations concerning the character of the anticompetitive purpose or effect of the conspiracy. And, finally, the relevant services and market are not identified or defined.

In sum, plaintiff has asserted in his affidavit the bare minimum to survive a motion pursuant to Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. But his complaint fails to allege the basic elements of a Sherman Act violation. Although this is plaintiff's second attempt to state a valid Sherman Act claim, the complaint still offers only uncertain clues as to plaintiff's theory of liability and the facts which would support a finding of Sherman Act liability. It is simply not fair to the defendants, and it would be an onerous imposition on the judicial process, to permit litigation to go forward on the basis of such conclusory and speculative allegations. Accordingly, plaintiff's Sherman Act claims will be dismissed with prejudice.

## II. 42 U.S.C. § 1983 CLAIM

Plaintiff's amended complaint presses two theories based on 42 U.S.C. § 1983. First, Dr. Pao alleges that his constitutional right to equal protection of the law was violated when the defendants, acting "under color of state law," rejected his application for staff privileges for discriminatory reasons. Second, plaintiff alleges that he had a property interest in the staff privileges of which the defendants, acting under color of state law, deprived him without due process of law.

In their motion to dismiss, defendants contend that plaintiff has not alleged a constitutionally protected property right, and that the Hospital's relationship with the state is not sufficiently close to warrant a finding that the Hospital's denial of the plaintiff's application for staff privileges constitutes state action.

■ In order to substantiate a claim based on 42 U.S.C. § 1983, the plaintiff must establish that the defendant (1) acted under color of state law, and (2) caused an injury to plaintiff's constitutional or federal rights. *See Parrat v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Because the amended complaint makes no allegations sufficient to warrant a finding that defendants have acted under color of state law, Dr. Pao's claim based on § 1983 must fail. Dr. Pao urges that the disposition of his claim be postponed pending the answer to its interrogatories (number 5 in particular), which seek to discover the amount of funding the defendants receive from various government sources. This is unnecessary since the alleged infringement of the plaintiff's rights has in no way been linked to actions "fairly attributable to the state." *Lugar v. Edmonsen Oil Co.,* —— U.S. ——, ——, 102 S.Ct. 2744, 2757, 73 L.Ed.2d 482 (1982). (Burger, C. J., dissenting).

The amount of funding the Hospital receives does not in itself bear on the critical question of whether the state was responsible for the defendants' acts in this case. *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (holding that although the state finances the expenses of more than 90% of a private nursing home's patients, no state action is present in the absence of coercion or "significant encouragement" from the state).

Neither can the plaintiff show that the general regulatory scheme involving the volume and type of services offered by the Hospital establishes "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Blum v. Yaretsky, supra* (holding that although the defendant was extensively regulated by the state, a decision by private management to discharge an employee was not state action since the type of personnel matter at issue was not among the regulated activities, and the decision to discharge was not in any sense directed by the state).

Dr. Pao has alleged no facts to support a claim that the state regulated, or in any way controlled, the personnel decisions of the defendant Hospital. Dr. Pao has merely alleged, at most, that a substantial portion of the Hospital's funding comes from the state, and that the state generally regulates matters unrelated to the Hospital's hiring decisions.

Since the amended complaint has stated no set of facts which would entitle the plaintiff to relief under 42 U.S.C. § 1983, this count will be dismissed with prejudice. *See Cardio-Medical Associates, supra,* 536 F.Supp. at 1087–98.

### III.   42 U.S.C. § 1985(3) CLAIM

■ The plaintiff's amended complaint alleges that the defendants engaged in a racially motivated conspiracy in violation of 42 U.S.C. § 1985 (Civil Rights Act of 1871) to deprive him of staff privileges at Holy Redeemer Hospital. Although Dr. Pao has styled this claim as one arising under section 1985, he has alleged no fact or theory that would place it outside of those claims comprehended by Title VII of the Civil Rights Act of 1964. As a result, the plaintiff's claim must be dismissed with prejudice in light of the Supreme Court's holding in *Great American Federal Savings and Loan Association v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) that "§ 1985 may not be invoked to redress violations of Title VII." [1]

### IV.   TITLE VII CLAIM

Dr. Pao contends in this count of his amended complaint that the defendants were potential employers, within the meaning of 42 U.S.C. § 2000e(b), who discriminatorily denied him employment privileges in violation of § 2000e–2(a).

The defendants urge this court to dismiss the plaintiff's claim on the ground that the plaintiff has failed to satisfy the jurisdictional provisions required by the Act as a pre-condition to filing suit in this court. Specifically, the defendants argue that (a) the plaintiff failed to file his complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory infraction as required by 42 U.S.C. § 2000e–5(e); (b) the defendants lack the employer status under § 2000e(b) to bring their alleged discriminatory actions within the purview of Title VII; and, (c) under § 2000e–5(f)(1), the plaintiff's failure to identify by name James Gallagher, Jr., and Richard Goldberg in his EEOC complaint estops the plaintiff from naming them as defendants in the present action.

#### A.   The 180-Day Filing Requirement

■ Addressing these claims in order, I first find that the plaintiff has satisfied the 180-day filing requirement pursuant to 42 U.S.C. § 2000e–5(e). The plaintiff alleges in his amended complaint that the Hospital discriminatorily denied him staff privileges

---

1. That claims such as plaintiff's § 1985 conspiracy charge are contemplated by Title VII is made clear in the Supreme Court's decision in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974) which stated that:

   Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

   to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, or national origin.

   This broad characterization seems clearly to embrace the plaintiff's claim.

on April 25, 1979. The plaintiff also notes in his EEOC complaint that this was the date of the most recent violation of his Title VII rights. The defendant claims that the 180-day period for filing began to run on January 27, 1978 when the plaintiff was first denied the staff privileges he desired.

Assuming for the purposes of this motion that the plaintiff's allegations are true, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the plaintiff's filing of an EEOC complaint on October 12, 1979 was timely. The facts of this case are similar to those in *Molybdenum Corporation of America v. Equal Employment Opportunity Commission,* 457 F.2d 935 (1972), where the Tenth Circuit found that the 180-day period commenced after the plaintiff's second application for employment had been denied for allegedly discriminatory reasons. The court found that the aggrieved party's two applications for employment were to be treated as "two separate and distinct acts," the second of which was actionable since it fell within the prescribed 180 day filing period. 457 F.2d at 936.[2]

The Third Circuit affirmed this principle in *Jurinko v. Edwin L. Wiegand Company,*

477 F.2d 1038 (3rd Cir. 1973), *vacated on other grounds,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), where the plaintiffs sought employment on three separate occasions, only the last of which occurred within the then statutory period of 90 days prior to the filing of a complaint with the EEOC. 477 F.2d at 1042. The court found that the relevant 90-day period began afresh after the latest of the three allegedly discriminatory employment rejections. *Id. See also Roberts v. North American Rockwell Corp., supra* note 2, 650 F.2d at 828.

In this case, the plaintiff has allegedly been denied hospital staff privileges within the 180-day period prescribed by the Act. Further, although he had been rejected on two prior occasions, there were no grounds for assuming that the plaintiff's subsequent applications or appeals would be unfruitful. This is especially true since the Hospital's purported justification for refusing the plaintiff's application was that the Hospital was overcrowded and that the plaintiff had access to other hospitals for the privileges he sought.[3] Accordingly, I decline to dismiss the plaintiff's complaint on this ground.[4]

---

**2.** Some courts have employed the "continuing violation doctrine" to recognize timely filing of an EEOC complaint. *See, e.g., Roberts v. North American Rockwell Corporation,* 650 F.2d 823 (6th Cir. 1981); *Belt v. Johnson Motor Lines,* 458 F.2d 443 (5th Cir. 1972). In *Smith v. Office of Economic Opportunity for State of Arkansas,* 538 F.2d 226 (8th Cir. 1976), the court held that "ordinarily an alleged discriminatory refusal to hire, standing alone, does not constitute a continuing wrong. Where, however, the suit challenges a practice of discrimination rather than an isolated instance, the alleged violation may be deemed continuing." 538 F.2d at 228–29.

The plaintiff has not sought to establish jurisdiction according to this theory. Even had he done so, I am not persuaded that the allegations before me can be characterized as sufficient to establish an ongoing pattern of discrimination. *See generally Bronze Shields, Inc. v. New Jersey Dept. of Civil Service,* 667 F.2d 1074 (1981) (discussing the scope of the continuing violation doctrine); *Macklin v. Spector Freight Sys., Inc.,* 478 F.2d 979 (D.C.Cir.1973); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The plaintiff has alleged no facts demonstrating a practice

by the defendants of actual discriminatory treatment of other applicants protected by Title VII, nor that he had a continuing "present violation" of his right to the privileges he sought. *Bronze Shields, supra,* at 1081–84; *United Airlines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

**3.** This case is thus readily distinguishable from the recent Third Circuit holdings in *Bronze Shields* and *Hood v. New Jersey Department of Civil Service and Urban Pioneers,* 680 F.2d 955 (3rd Cir.) (1982). In those cases, the hiring decisions at issue had definitely foreclosed any chance the plaintiffs had for gaining the positions they desired.

**4.** I note in passing, however, that the plaintiff's potential damages would be limited to the period subsequent to the cause of action he alleges accrued on April 25, 1979 and hence would not include those antecedent damages which might have been suffered as a result of the time-barred causes of action. *See, e.g., United Airlines v. Evans, supra,* 431 U.S. at 558, 97 S.Ct. at 1889; *Jurinko, supra* (damages were calculated from the time of the cause of action which invoked Title VII jurisdiction).

One further question which has not been resolved to my satisfaction is whether Dr. Pao

## B. The Employment Relationship

The defendants also assert that the plaintiff does not stand in an employment relationship with the Hospital within the meaning of 42 U.S.C. § 2000e–2. They stress that the plaintiff has adequate alternative facilities at which he can receive staff privileges, and that Dr. Pao did not depend on the defendant for access to employment opportunity to the degree contemplated by the Act. I cannot agree.

■ Whether or not the plaintiff had access to, or could gain access to, other hospital facilities, is not relevant to the principal question whether his Title VII rights have been violated. The purpose of Title VII is to eliminate hiring, firing and other practices relating to employment opportunities which are discriminatorily motivated. *Alexander v. Gardner-Denver Co.,* supra note 1, 415 U.S. at 44, 94 S.Ct. at 1017. Thus, the focal question is whether the defendants can be considered employers whose allegedly invidious conduct deprived the plaintiff of an employment opportunity within the meaning of the Act.

This case falls quite clearly within the line of cases beginning with *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C. Cir.1970). There, the D.C. Circuit held that a Title VII plaintiff need not establish an existing or potential *formal* employment relationship with the defendant in order to

sue. Instead, it was sufficient for the plaintiff to assert that the defendant significantly affected or controlled his access to other employment opportunities in a discriminatory manner. *Sibley Memorial Hospital, supra; see also Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670 (D.Md.1979); *Puntolillo v. New Hampshire Racing Association,* 375 F.Supp. 1089 (D.N.H.1974).

In *Sibley,* the D.C. Circuit found that the requisite amount of control existed over a plaintiff's access to employment where the defendant hospital discriminatorily refused to refer a private-duty male nurse to female patients. Although the hospital did not directly employ the nurse, the court concluded that since the Hospital's conduct foreclosed employment opportunities that would otherwise have been available to the plaintiff, the case came within the ambit of Title VII. *Sibley, supra,* 488 F.2d at 1341.

■ In the present case, it appears that if the allegations contained in the amended complaint are true, the defendants' discriminatory conduct will have deprived the plaintiff of prospective patients desiring the convenience and resources of Holy Redeemer Hospital's retinal facilities. Thus, Holy Redeemer Hospital had the same capacity as the defendant in *Sibley* to control the plaintiff's access to those prospective patients who are his ultimate "employers."[5]

---

has met the jurisdictional requirement under § 2000e–5(c), which would require the referral of the plaintiff's complaint to the Pennsylvania Human Relations Commission ("PHRC"). *See, e.g., Bell v. Wyeth Labs,* 448 F.Supp. 133 (E.D. Pa.1978). The plaintiff has alleged in his complaint that he received a "right to sue" letter from the EEOC pursuant to § 2000e–5(b). If this "right to sue" letter includes a recital that the EEOC is satisfied that all the jurisdictional prerequisites have been met, the plaintiff would be exempted from having first to exhaust his remedial avenues with the PHRC. *See generally Huggler v. Elkins Stroud Suplee and Co.,* 505 F.Supp. 9, 11–12 (E.D.Pa.1980). Since the Supreme Court has made clear that the EEOC referral procedure comports with the jurisdictional requirements of § 2000e–5(c), *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532, I will assume for the time being that jurisdiction will

lie. Of course, this court's jurisdiction is contingent upon the contents of the EEOC "right to sue" letter.

5. The individual defendants have raised the issue of whether they can be considered employers as defined by 42 U.S.C. § 2000e(b). That provision allows for the term employer to encompass persons:

engaged in an industry affecting fifteen or more employees for each working day and each of the twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . .

It is unnecessary to consider whether Dr. Goldberg is an agent of the Hospital in light of the holding, *infra,* that he did not receive adequate notice of the plaintiff's EEOC complaint. However, I find that the allegations in the amended complaint sufficiently qualify Mr. Gallagher, a member of the Hospital's Board of Directors, as an agent of the Hospital.

In light of Congress' intent to reach all forms of discriminatory employment practices that affected employment opportunity, it seems apparent that the amended complaint sufficiently alleged an employment relationship covered by Title VII. *See generally Sibley, supra,* 488 F.2d at 1341–42; *Tipler v. E. I. duPont deNemours and Co.,* 443 F.2d 125, 131 (6th Cir. 1971) ("Title VII of the Civil Rights Act should not be construed narrowly"); 1964 U.S.Code Cong. and Admin.News, p. 2355, 1972 U.S.Code Cong. and Admin.News. p. 2137).

### C. The Improperly Named Defendants

The defendants assert that the plaintiff cannot avail himself of this court's jurisdiction as to defendants James Gallagher, Jr., and Richard Goldberg since they were not named in the plaintiff's EEOC complaint as is required by 42 U.S.C. § 2000e–5(f)(1). While dismissal of this count appears warranted with respect to Dr. Goldberg, I find that to dismiss defendant Mr. Gallagher would impose too technical a reading of Title VII's jurisdictional requirements on the plaintiff's claim.

In his complaint to the EEOC, the plaintiff claimed in the section provided for "particulars" that the sought-after staff privileges were denied him by the Board of Directors on April 25, 1979. The Fifth Circuit, in declining to give a restrictive reading to language used in filling out a form of administrative complaint frequently filed by laypersons, found in *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir. 1970), that a complainant's "factual statement" is "the crucial element" in an EEOC charge. In an analogous vein, the Third Circuit has held, in *Glus v. G. C. Murphy Co.,* 562 F.2d 880, 887–88 (3rd Cir. 1977), that jurisdictional requirements under 42 U.S.C. § 2000e–5(f)(1) should be "liberally construed."

Dr. Pao's EEOC complaint, though perhaps inartful, fulfilled the purpose of the EEOC filing requirements which is "to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." *Glus, supra,* 562 F.2d at 888. *See also Kaplan v. Intern. Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators of the United States and Canada,* 525 F.2d 1354 (9th Cir. 1975) (holding that where the complaint, in general, sufficiently apprises the EEOC of the alleged discriminatory parties and acts, the right to bring a civil action against parties not actually named should not be forfeited). Notice to the Board of Directors was notice to its individual members. *See Skyers v. Port Authority of N.Y. and N.J.,* 431 F.Supp. 79 (S.D.N.Y.1976) (holding that an EEOC employment discrimination complaint naming the "Port Authority" was adequate notification to the Port Authority's twelve commissioners who were responsible for management and employment decisions); *Evans v. Sheraton Park Hotel,* 503 F.2d 177 (D.C.Cir.1974); *Chastang v. Flynn and Emrick Co.,* 365 F.Supp. 957, 961–64 (D.Md.1973), *aff'd in part and rev'd in part on other grounds,* 541 F.2d 1040 (4th Cir. 1976); *Kelly v. Richland School District 2,* 463 F.Supp. 216 (D.S.C. 1978).

Moreover, the plaintiff has alleged that counsel for Board of Directors' member James Gallagher, Jr., did have some communication with the EEOC in regard to the plaintiff's charge. The defendants, including Mr. Gallagher, and other members of the Board of Directors, have not asserted that they received no actual notice of the plaintiff's EEOC complaint, that their interests were in any way prejudiced by the plaintiff's failure to name them individually in his EEOC charge, or that their relationship with the Hospital was not so close as to have encouraged the plaintiff to have regarded them as substantially the same entity. *See Glus, supra,* 562 F.2d at 888; *Vanguard, supra,* 471 F.Supp. at 688–9; *Chastang, supra,* 365 F.Supp. at 964.

Accordingly, I decline to dismiss Mr. Gallagher and the Hospital's Board of Directors as defendants in this case. To do so would deprive the plaintiff of a forum for his cause of action against Holy Redeemer's Board of Directors without furthering the intended goals embodied in Title VII.

Although the plaintiff has alleged in this court that Dr. Goldberg was acting as an agent of the Hospital, Dr. Goldberg was not in any way identified to the EEOC in the plaintiff's EEOC complaint. Thus, the above analysis does not apply to grant this court jurisdiction over Dr. Goldberg with respect to plaintiff's Title VII claims.

## V. THE PENDENT STATE CLAIMS

The plaintiff claims that the defendants' failure to grant him staff privileges violated the antitrust laws of Pennsylvania. The plaintiff further alleges that the defendants' conduct in denying him such privileges violated his common law tort and contract rights.

The defendants claim that the plaintiff's state claims are barred by Pennsylvania's Peer Review Protection Act, Pa.Stat.Ann. 63 § 425.2 et seq (Purdon 1981–82), and that the plaintiff's amended complaint fails to state a cause of action based on state law for which relief can be granted by this court.

I find it unnecessary at this time to consider whether, and to what extent, the Peer Review Protection Act controls the plaintiff's claim since the amended complaint fails to allege specifically what conduct of the defendants contravened Pennsylvania law.[6] Neither has the plaintiff's claim identified what specific tort, contract, or Pennsylvania antitrust theories it relies upon.

Therefore, I find it necessary to dismiss this vague claim for a second time, this time with prejudice.

## ORDER

For the reasons set forth in the accompanying Opinion, it is hereby ORDERED that:

1. Plaintiff's Sherman Act § 1 claim is DISMISSED with prejudice;

2. Plaintiff's claim based on 42 U.S.C. § 1983 is DISMISSED with prejudice;

3. Plaintiff's claim based on 42 U.S.C. § 1985(3) is DISMISSED with prejudice;

4. The defendants' motion to dismiss with prejudice the plaintiff's claim based on Title VII of the Civil Rights Act of 1964 is DENIED as to defendants Holy Redeemer Hospital and James Gallagher, et al., and GRANTED with respect to defendant Richard Goldberg.

5. The plaintiff's claims based on Pennsylvania statutory and common law are DISMISSED with prejudice.

---

6. I add, parenthetically, the unremarkable observation that the Peer Review Protection Act passed by the Pennsylvania General Assembly cannot endow the defendants with immunity

with respect to the plaintiff's Title VII claims over which I have retained jurisdiction. *See e.g., Robinson v. Magovern*, 83 F.R.D. 79 (W.D. Pa.1979).