**Esmat ZAKLAMA, M.D.,**
**Plaintiff–Appellant,**

v.

**MT. SINAI MEDICAL CENTER,**
**Defendant–Appellee.**

**Esmat ZAKLAMA, Plaintiff–Appellee,**

v.

**MT. SINAI MEDICAL CENTER OF GREATER MIAMI,**
**Defendant–Appellant.**

**Nos. 87–5428, 87–5554.**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

April 12, 1988.

---

Christopher Lynch, Adams, Hunter, Angones, Adams, Adams & McClure, Miami, Fla., for Mt. Sinai Medical Center.

Vidal Marino Velis, Gardana, Velis & De Le Puente, P.A., Miami, Fla., for Zaklama.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

VANCE, Circuit Judge:

Plaintiff Esmat Zaklama appeals from the district court's judgment for the defendant in his action under Title VII and 42 U.S.C. § 1981. Although the jury had returned a verdict for Zaklama, the district court granted the defendant's motion for judgment notwithstanding the verdict. Zaklama argues that the jury's verdict was supported by substantial evidence and that the district court erred in granting the defendant's motion. We agree and reverse.

### I.

Zaklama, a native of Egypt, is an anesthesiologist. He was educated in Egypt and received some medical training there before immigrating to the United States in 1978. Shortly after immigrating, Zaklama took and passed the ECFMG examination, which is administered as a medical degree equivalency examination for graduates of foreign medical schools. Having passed the ECFMG, Zaklama enjoyed the same status as a graduate of an American medical school, and the next step in his medical

training was to pursue an internship and residency.

After a short stint as a member of the staff at a hospital in New Jersey, Zaklama accepted a one year residency position with Jackson Memorial Hospital (Jackson Memorial) in Miami, Florida. Under the program residents spend three months at Jackson Memorial and rotate through each of three other Miami area hospitals during the other nine months. During their stay at each of the four hospitals residents are considered "appointees" of that hospital and are required to abide by each institution's rules and regulations.

Zaklama began the program along with thirty-two other residents on July 1, 1981. He was assigned first to Jackson Memorial, and his three months there passed without serious incident. Zaklama's next assignment took him to defendant Mt. Sinai Medical Center of Greater Miami (Mt. Sinai). Soon after his arrival Zaklama began to receive unfavorable evaluations from Dr. Marshall, Director of the Training Program at Mt. Sinai. Dr. Marshall found Zaklama hard to teach and sharply criticized his enthusiasm and technical competence. Dr. Marshall further indicated that he was pessimistic about Zaklama's future in anesthesiology. Zaklama's performance also was criticized by a surgeon with whom he had worked on one occasion. The surgeon reported that Zaklama had shown poor professional judgment and urged that Zaklama be kept "as far away as possible" from his patients.

In early December 1981 Dr. Moya, Chief of the Department of Anesthesiology at Mt. Sinai, decided that Zaklama could no longer remain at the hospital. On December 11 Dr. Marshall summoned Zaklama from the operating room and told him that he would have to leave Mt. Sinai. Shortly thereafter Dr. Craythorne, Director of the Residency Training Program at Jackson Memorial, dismissed Zaklama from the residency program.

In October 1982 Zaklama brought this action against Mt. Sinai and Jackson Memorial. In his complaint he alleged that he had been discharged on the basis of his race, national origin and religion in violation of 42 U.S.C. §§ 1981 and 2000e–2. In January 1986 the district court dismissed the complaint as to Jackson Memorial, and the case proceeded to trial solely against Mt. Sinai. After a three day jury trial in February 1987 the jury returned a verdict for Zaklama and awarded him compensatory damages of $85,000 and punitive damages of $50,000. Mt. Sinai then filed a motion for judgment notwithstanding the verdict which the district court granted. The court found: (1) that Zaklama had failed to establish a prima facie case in that he failed to show that he was discharged by Mt. Sinai or one of its agents, and (2) that he had failed to prove that he was discharged because of his race, national origin or religion. After judgment was entered for Mt. Sinai, Zaklama brought this appeal. Mt. Sinai cross appeals from the court's order denying its request for attorneys' fees.

## II.

### A.

 We first address the question of whether Zaklama established a prima facie case. To establish a prima facie case Zaklama was required to prove by a preponderance of the evidence that he:

is a member of a protected class, was qualified for the position held, and was discharged ... while a person outside of the class with equal or lesser qualifications was retained....

*Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982).[1] The district court found that Zaklama failed to prove that he was discharged by Mt. Sinai or one of its agents. The court stressed that it was Jackson Memorial that operated the residency program and employed Zaklama, not Mt. Sinai. The district court stated:

---

1. In the disparate treatment context the elements of a claim under section 1981 are essentially the same as those under Title VII. *Whit-* *ing v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir.1980); *Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482, 1484 (9th Cir.1986).

Even if plaintiff was discharged by Jackson as a result of adverse recommendations by Mt. Sinai physicians defendant would not be liable. The statute under which plaintiff sought relief makes it "unlawful ... for an employer to discharge any individual ... because of such individual's ... religion ... or national origin." The subject statute does not make it unlawful to make recommendations to an employer upon which a discharge might be based.

The district court reads Title VII and section 1981 too narrowly. While it is true that it was Jackson Memorial that discharged Zaklama from the residency program, it does not follow that Mt. Sinai is immune from liability. Title VII makes it unlawful for an employer to:

fail or refuse to hire or to discharge any individual, or *otherwise to discriminate against any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1) (emphasis added). It is clear from the language of the statute that Congress intended that the rights and obligations it created under Title VII would extend beyond the immediate employer-employee relationship.

In *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973), the District of Columbia Circuit faced a situation somewhat analogous to the one presented here. That case involved allegations by a self-employed male nurse that a hospital had refused to refer him to female patients in need of nursing services. Despite the absence of an employment relationship with the hospital, the plaintiff brought an action against the hospital under Title VII. In finding that the plaintiff had stated a claim the court of appeals held that parties other than a plaintiff's actual or potential employer could be liable under Title VII if they control the plaintiff's access to employment and deny that access based on unlawful criteria. 488 F.2d at 1342. The court stated:

Control over access to the job market may reside, depending upon the circumstances of the case, in a labor organization, an employment agency, or an employer as defined in Title VII; and it would appear that Congress has determined to prohibit each of these from exerting any power it may have to foreclose, on invidious grounds, access by any individual to employment opportunities otherwise available to him. To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.

*Id.* at 1341.

This court and other courts have followed *Sibley. Pardazi v. Cullman Medical Center,* 838 F.2d 1155 (11th Cir.1988). In *Doe v. St. Joseph's Hospital,* 788 F.2d 411 (7th Cir.1986), the defendant hospital had suspended the plaintiff doctor's staff privileges. The district court dismissed the plaintiff's Title VII claim on the ground that there was no employment relationship between the plaintiff and the hospital. The Seventh Circuit reversed, citing *Sibley. Id.* at 421–25. The court stated:

[*Sibley's* ] reasoning seems to apply to the case before us. Plaintiff alleges that the hospital's action has interfered with her employment opportunities. Congress presumably did not intend to allow the hospital to exploit its power to grant and deny staff privileges in order to discriminatorily interfere with Doe's employment opportunities with her patients.

*Id.* at 423 (footnote omitted). *See also Gomez v. Alexian Bros. Hosp.,* 698 F.2d 1019, 1021 (9th Cir.1983) (following *Sibley* ); *Pao v. Holy Redeemer Hosp.,* 547 F.Supp. 484, 494–95 (E.D.Pa.1982) (same).

Section 1981 is equally broad. That statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citi-

zens...." Nothing in the language of section 1981 suggests that it should be limited to situations where the parties occupy a direct employment relationship. Indeed, its language suggests just the opposite. We thus conclude that *Sibley* is equally applicable to a claim under section 1981. *Gomez*, 698 F.2d at 1022.[2]

■ Here, the evidence was more than sufficient to establish a prima facie case against Mt. Sinai. It is undisputed that Zaklama's dismissal from the residency program was the direct result of Dr. Marshall's adverse evaluations and Mt. Sinai's decision to bar him from the hospital. Mt. Sinai was in a position to affect Zaklama's employment in the residency program and did affect his employment with its adverse evaluations. We therefore conclude that Zaklama established a prima facie case.[3]

### B.

The district court's grant of judgment notwithstanding the verdict was also based on its conclusion that Zaklama had failed to prove that he was discharged on the basis of his race, national origin or religion. The court found that Zaklama failed to carry his burden of proving that Mt. Sinai's explanation for his dismissal was a pretext for unlawful discrimination. In reaching its conclusion the court stressed the absence of any direct evidence of discrimination and Zaklama's poor evaluations and test scores. It also noted Zaklama's failure to present any rebuttal evidence following Mt. Sinai's case. The court stated:

> Once a legitimate, non-discriminatory basis for the plaintiff's discharge was established, the plaintiff had the burden of proving by a preponderance of the evidence that that reason was merely a pretext for his discharge. However, plain-

tiff came forward with no evidence to carry this burden. His attorney simply stated in closing argument that "it was obvious" that the reasons proffered for the plaintiff's discharge were nothing more than a pretext designed to cover up some form of prohibited discrimination. (Citations omitted.)

■ There are two problems with the district court's analysis. First, a plaintiff need not present evidence in rebuttal in order to demonstrate pretext. A plaintiff may instead "rely solely on his initial evidence combined with evidence elicited from the defendant on cross-examination." *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 802 n. 1 (11th Cir.1985); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981). More importantly, however, the court ignored the standard governing motions for judgment notwithstanding the verdict. A district court cannot grant a motion for judgment notwithstanding the verdict simply because it believes that the movant has the better case. *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir.1969). Rather, the motion should not be granted unless after considering all the evidence the court concludes that the jury's verdict is not supported by substantial evidence. *Id.* Substantial evidence is evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions. *Id.* at 374; *see Reynolds v. CLP Corp.*, 812 F.2d 671, 674 (11th Cir.1987); *Michigan Abrasive Co., Inc. v. Poole*, 805 F.2d 1001, 1004 (11th Cir.1986).

■ Zaklama introduced ample evidence from which a reasonable jury might

---

**2.** Mt. Sinai contends that Zaklama only alleged discrimination on the basis of his religion and national origin and thus did not state a claim under section 1981. The record does not support this argument. Zaklama's complaint also alleges discrimination on the basis of his race and thus states a claim under section 1981. *See Saint Francis College v. Al–Khazraji*, — U.S. ——, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

**3.** Mt. Sinai also contends that Dr. Moya and Dr. Marshall were independent contractors and thus were not agents of the hospital. It argues that their acts of discrimination cannot be attributed to Mt. Sinai. This argument is frivolous. Dr. Moya was Chairman of the Department of Anesthesiology at Mt. Sinai and Dr. Marshall was the director of the hospital's training program. There is simply no basis for Mt. Sinai's argument that they were not agents of the hospital.

conclude that Mt. Sinai unlawfully discriminated against him. Two anesthesiologists under whom Zaklama worked while at Mt. Sinai both testified that Zaklama's work had been satisfactory. Zaklama introduced evidence to rebut some of the charges made by Dr. Marshall in his evaluations.[4] He also introduced evidence that other residents with low test scores and unfavorable evaluations had been allowed to continue in the program. Finally, Zaklama established that he had successfully completed the residency requirements for an anesthesiologist since leaving Mt. Sinai. While Zaklama did not introduce any direct evidence of discrimination, direct evidence is not required. A plaintiff is entitled to rely on circumstantial evidence to convince the trier of fact that an employer's explanation for his discharge is pretextual and that his discharge was more likely than not motivated by discriminatory intent.

We have not overlooked Mt. Sinai's allegations of Zaklama's incompetence. Mt. Sinai introduced evidence which if believed might have justified Zaklama's dismissal. We simply hold that Zaklama introduced sufficient evidence to make the issue of discriminatory intent one for the jury. Once the jury found in Zaklama's favor, the district court was not free to reweigh the evidence in ruling on a motion for judgment notwithstanding the verdict.

### III.

We conclude that the jury's verdict was supported by substantial evidence both as to its finding that Zaklama had established a prima facie case and as to its finding of unlawful discrimination on Mt. Sinai's part. We therefore reverse the district court's judgment, and order that judgment be entered in accordance with the jury's verdict. The district court's denial of Mt. Sinai's motion for attorney's fees is affirmed.

---

**4.** One of the most serious charges was Dr. Marshall's statement that Zaklama had been found asleep in the operating room. On cross-examination, however, Dr. Marshall admitted that he could not recall when the alleged incident occurred or who reported it. As for the surgeon's

REVERSED in part and REMANDED and AFFIRMED.

criticism, the attending anesthesiologist on the case testified that Zaklama's performance was satisfactory and that any criticism should have been directed at her as anesthesiologist in charge.