**Margaret A. RENNELS, M.D., Appellant,**

v.

**NME HOSPITALS, INC. d/b/a Sierra Medical Center, Appellee.**

No. 08–97–00027–CV.

Court of Appeals of Texas, El Paso.

March 19, 1998.

Rehearing Overruled April 15, 1998.

under the facts here the Act may apply, we reverse and remand.

## FACTS

NME Hospitals, Inc. d/b/a Sierra Medical Center (the hospital) moved for summary judgment urging that plaintiff Margaret Rennels, M.D. could not maintain causes of action against the hospital for violating the Texas Commission on Human Rights Act (TCHRA)[1] because the hospital was not her employer. The hospital also argued that because Rennels had no cause of action under the TCHRA, her derivative civil conspiracy claim must also fail. The trial court granted the hospital's motion. This appeal follows.

Rennels was employed by Sierra Laboratory Associates (SLA) as a pathologist. In turn, SLA contracted with the hospital to provide it with pathology services. The contract between SLA and the hospital necessarily entailed continuous interaction between SLA and the hospital administrators.

In her summary judgment affidavit, Rennels stated that on October 7, 1993, her attorney gave notice to the hospital that she was opposing a discriminatory practice in her employment at SLA, namely that SLA was refusing to promote her to shareholder because of her gender. Later in 1994, she received a letter from SLA informing her that she would be made a shareholder when the necessary paperwork was completed. She believed the purpose of the letter was to assure her that SLA desired to have her as a shareholder.

On April 4, 1994, Rennels overheard a conversation between Marcus Fry, CEO for the hospital, and Judy Pester, M.D., a shareholder at SLA. In that conversation, Fry told Pester that he had no plans to allow Rennels to become a shareholder in SLA, and requested Dr. Pester's help. Pester assured Fry she would do whatever was needed to prevent Rennels from becoming a shareholder.

On April 28, 1994, SLA's attorneys advised Rennels she would not be made a shareholder. They conditioned her continued employ-

Dennis L. Richard, Richard, Lee, Cobb & Hall, El Paso, for Appellant.

Yvonne K. Puig, Cynthia S. Anderson, Kenneth R. Carr, Kemp, Smith, Duncan & Hammond, P.C., El Paso, for Appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

This case involves the application of the Texas Commission on Human Rights Act where the parties do not have a direct employer/employee relationship. Finding that

1. TEX. LAB.CODE ANN. § 21.001 (Vernon 1996).

ment at SLA upon Rennels signing a release of claims against both SLA *and Sierra Medical Center* of any claims of employment discrimination. She refused to sign the release documents. She later filed a discrimination claim with the EEOC. Her employment with SLA was terminated on May 25, 1994. She filed her lawsuit against NME Hospitals Inc., d/b/a Sierra Medical Center, Sierra Laboratory Associates, and Jorge Bilbao, M.D., alleging sex discrimination, tortious interference with employment, and breach of contract on December 23, 1994. The only issue remaining for appeal here is summary judgment granted for NME d/b/a Sierra Medical Center. In four related points of error, Dr. Rennels challenges the trial court's grant of summary judgment.

### Summary Judgment Burden

In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[2] Evidence favorable to the nonmovant is taken as true, and every reasonable inference is resolved in favor of the nonmovant.[3] To prevail on summary judgment, a defendant must disprove as a matter of law at least one of the essential elements of each of plaintiff's causes of action, or it must conclusively establish one or more of its defenses.[4]

### Texas Commission on Human Rights Act

■ The Texas Legislature modeled the Texas Commission on Human Rights Act (TCHRA) on federal law. One of the express purposes of the TCHRA is the execu-

tion of the policies embodied in Title VII of the federal Civil Rights Act of 1964, as amended.[5] In interpreting the TCHRA, Texas courts try to correlate state law with federal law in the area of discrimination in employment.[6] Where few cases interpreting the TCHRA exist, Texas courts look to analogous federal precedent.[7]

Rennels brought a retaliatory discharge suit against the hospital under section 21.055 of the TCHRA.[8] Section 21.055 of the TCHRA states:

An *employer*, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a *person* who, under this chapter:

(1) opposes a discriminatory practice;

(2) makes or files a charge;

(3) files a complaint; or

(4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.[9]

Rennels maintains that, by its own clear language, the statute does not require a direct employer/employee relationship. The ordinary meaning of the words chosen by the legislature does not suggest that "person" was intended to apply only to an employee of an employer.[10] We agree.

■ We believe Rennels' relationship with the hospital was one in which the TCHRA may be invoked, even though the hospital did not directly employ Rennels, because it had the power to adversely affect Rennels' busi-

2. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

3. *Id.* at 549.

4. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 674 (Tex. App.—El Paso 1997, writ denied).

5. *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex.1991).

6. *Id.*

7. *See Guerrero v. Refugio County*, 946 S.W.2d 558, 566 (Tex.App.—Corpus Christi 1997, no

writ); *Holt v. Lone Star Gas Co.*, 921 S.W.2d 301, 304 (Tex.App.—Fort Worth 1996, no writ) (op. on reh'g); *Farrington v. Sysco Food Services, Inc.*, 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

8. *See* Tex. Lab.Code Ann. § 21.055 (Vernon 1996).

9. *Id.* (emphasis added).

10. *See Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C.Cir.1973). Interpreting a similar provision in a Title VII context, the D.C. court stated that there is no "good reason to confine the meaning of 'any individual' to include only former employees and applicants for employment, in addition to present employees."

ness opportunities in much the same manner as a direct employer, a labor union, or an employment agency. In such a situation, numerous federal courts, relying on the well-considered opinion in *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C.Cir. 1973)[11] have recognized a cause of action where persons have been unfairly prejudiced by discriminatory interference with their employment opportunities by a party other than their direct employer.[12] In *Sibley*, the court stated:

> The Act [Title VII], in providing for the filing of complaints with EEOC and of eventual actions in the District Court, does not use the term 'employee'. The phrase is, rather, the 'person aggrieved;' and that term can certainly be taken as comprehending *individuals who do not stand in a direct employment relationship with an employer.*[13] The fact that the Act purports to provide remedies for a class broader than direct employees is a strong indication that the proscriptions contemplated by [42 U.S.C. § 2000e–2(a)(1)] reach beyond the immediate employment relationship. It seems unlikely that Congress would confer standing to bring a suit under the Act upon persons without rights under the Act because they are not employees.[14]

The court further noted:

> To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering

with *an individual's employment opportunities with another employer,* while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited.[15]

We find *Sibley* persuasive. Rennels is claiming that the discriminatory employment practices of the hospital, a third-party employer, harmed her business and employment opportunities with her employer.[16] The application of the *Sibley* decision is wholly consistent with the defined purposes of the TCHRA. By allowing claims against a third-party employer who adversely affects a person's business opportunities, we are advancing a stated goal of the TCHRA, to "secure for persons in this state, including persons with disabilities, freedom from discrimination in certain employment transactions, in order to protect their personal dignity[.]" [17] In addition, we believe that by applying the *Sibley* doctrine here, we are synthesizing federal and state common law by recognizing an established federal common law exception to the general rule. Consequently, persons bringing causes of action under state law are afforded the same protections that they would enjoy under the federal common law.

In arguing that we should decline to recognize a *Sibley* cause of action under the TCHRA, the hospital contends that the Fifth

---

11. 488 F.2d 1338 (D.C.Cir.1973).

12. *See Daniels v. Allied Elec. Contractors Inc.*, 847 F.Supp. 514, 519 (E.D.Tex.1994) (adopting *Sibley* rationale); *see also Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 875 (6th Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991); *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294–95 (11th Cir.1988); *Pardazi v. Cullman Med. Ctr.*, 838 F.2d 1155, 1156 (11th Cir.1988); *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir.1983); *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 n. 3 (9th Cir.1980); *Morrison v. American Bd. of Psychiatry*, 908 F.Supp. 582, 584–85 (N.D.Ill.1996); *Dortz v. City of New York*, 904 F.Supp. 127, 144–45 (S.D.N.Y.1995); *LeMasters v. Christ Hosp.*, 777 F.Supp. 1378, 1382 (S.D.Ohio 1991); *Pao v. Holy Redeemer Hosp.*, 547 F.Supp. 484, 494–95 (E.D.Pa.1982). These cases adopt the *Sibley* rationale and allow the plaintiff to maintain a cause of action against the

defendant even though there is no employer/employee relationship.

13. Tex. Lab.Code Ann. § 21.055 (Vernon 1996) similarly refers to "a person," not an employee.

14. *Sibley Mem'l Hosp.*, 488 F.2d at 1341 (emphasis added).

15. *Id.* (emphasis added).

16. We note that the *Sibley* doctrine has frequently been applied to disputes between doctors and hospitals because of the unique business relationship they share. *See Christopher*, 936 F.2d at 875; *Zaklama*, 842 F.2d at 294–95; *Pardazi*, 838 F.2d at 1156; *LeMasters*, 777 F.Supp. at 1382; *Gomez*, 698 F.2d at 1019; *Pao*, 547 F.Supp. at 494–95.

17. Tex. Lab.Code Ann. § 21.001(4) (Vernon 1996).

Circuit has rejected Sibley,[18] and that we are bound by the decisions of the federal circuit in which our district resides.[19] The hospital also points to a case from a Texas court of appeals which, it contends, has required an employer/employee relationship for suits under the TCHRA.[20] Although we look to Fifth Circuit cases interpreting Title VII to guide our interpretation of the TCHRA, we do not read the cases relied upon by the hospital as rejecting the *Sibley* doctrine. First, we conclude that the cases relied upon by the hospital are inapplicable as they do not rely upon *Sibley* at all. Rather, plaintiffs in those cases attempted to demonstrate that a direct employer/employee relationship existed between the defendant and plaintiff in order to invoke Title VII or TCHRA.[21] Dr. Rennels has never sought to establish that the hospital was her employer, and therefore we find that the "hybrid economic realities/common law control" test is not applicable here.[22] Second, we note that the Fifth Circuit has specifically left unresolved the question of whether a person may bring an employment discrimination suit against a defendant who interferes with the plaintiff's employment opportunities with a third party, and that at least one federal district court within the Fifth Circuit has adopted the *Sibley* rationale without correction by the higher court.[23] We therefore conclude that neither Fifth Circuit precedent, nor our sister court's decision in *Guerrero v. Refugio County*, 946 S.W.2d 558 (Tex.App.—Corpus Christi)[24] precludes our decision here.

■ Rennels has established genuine issues of material fact regarding the actions of the hospital in adversely affecting her business and employment opportunities. Likewise, she has established a nexus between herself and the hospital which falls within the *Sibley* doctrine. Finally, as Rennels may maintain her retaliation claim, we conclude she has established material fact issues regarding her claim of civil conspiracy against the hospital, as well. Because we hold the *Sibley* doctrine controls, we find that the trial judge erred in granting the hospital's motion for summary judgment. We therefore sustain Dr. Rennels' four points of error.

## CONCLUSION

We reverse the summary judgment and remand for further proceedings consistent with this opinion.

BARAJAS, C.J., dissenting.

BARAJAS, Chief Justice, dissenting.

I respectfully dissent. While the majority is clearly correct that in interpreting the Texas Commission on Human Rights Act, Texas courts try to correlate state law with its federal counterpart in the area of discrimination of employment, the majority has improperly expanded the statute beyond its meaning to include individuals who do not have a direct relationship with either an employer, labor union, or employment agency. Under the facts of this case, Rennels certainly would have a cause of action against Sierra Medical Center; however, I do not read the statute to afford her statutory protections, nor have I been persuaded that the Texas Legislature intended such protections under these circumstances.

---

**18.** Citing *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117, 118 (5th Cir.1993) and *Fields v. Hallsville I.S.D.*, 906 F.2d 1017, 1019 (5th Cir.1990).

**19.** *Rios v. Texas Commerce Bancshares, Inc.*, 930 S.W.2d 809, 818–19 (Tex.App.—Corpus Christi 1996, writ denied); *Holt*, 921 S.W.2d at 304.

**20.** *Guerrero*, 946 S.W.2d at 566–68.

**21.** *Deal*, 5 F.3d at 118 and *Fields*, 906 F.2d at 1019; *Guerrero*, 946 S.W.2d at 566–68.

**22.** This test places foremost importance on defendant's right to control the employee's conduct, including right to hire and fire, supervise, and set the work schedule. The economic realities component focuses on whether defendant pays the employee's salary, withholds taxes, provides benefits, and sets the terms and conditions of employment. *Deal*, 5 F.3d at 119; *Fields*, 906 F.2d at 1020.

**23.** *Daniels v. Allied Elec. Contractors Inc.*, 847 F.Supp. 514, 520 (E.D.Tex.1994).

**24.** 946 S.W.2d 558.