**NAVARRO COUNTY v. TULLOS, County Auditor, et al.　(No. 8759.)*

(Court of Civil Appeals of Texas.　Dallas. Feb. 11, 1922.　Rehearing Denied March 4, 1922.)

**I. Mandamus ⊕⊃10—Party seeking writ must have clear and definite right.**

Mandamus being an extraordinary remedy employed only in unusual cases where no other remedy exists, or they are inadequate and ineffectual, the writ will not be granted unless the party seeking it reveals a clear and definite right to it.

**2. Mandamus ⊕⊃7—Not a writ of right.**

Mandamus is not altogether a writ of right, and the withholding and granting of it is largely within the sound discretion of the court, which discretion, although the proceeding is a common-law one, is to be exercised upon principles of equity.

**3. Mandamus ⊕⊃73(1)—County auditor not to be required by mandamus to delegate duties to persons selected by commissioners' court to make investigations.**

A county auditor cannot be required by mandamus to delegate functions to some person or set of persons arbitrarily selected by the commissioners' court merely for the purpose of investigating acts and transactions of different officials who have gone before and whose official careers have expired.

**4. Mandamus ⊕⊃154(4)—Petition held not to show county auditor delinquent in duties so as to warrant compelling him to permit investigation of books.**

A petition for mandamus to require a county auditor to allow an audit of his books and accounts by a firm of auditors employed by the commissioners' court *held* not to sufficiently show misconduct on the part of the auditor.

**5. Mandamus ⊕⊃154(2)—Allegations in petition for mandamus held mere conclusions.**

Allegations in petition for mandamus that the conduct of the county auditor and his predecessors had rendered necessary employment of accountants *held* mere declarations of conclusions rather than of facts.

**6. Mandamus ⊕⊃73(1)—Remedy where county auditor refuses to perform duties.**

Where county auditor refuses to perform his duties, a writ of mandamus would arise in behalf of the commissioner's court to require him to supply information lawfully demanded.

---

⊕⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused April 12, 1922.

**7. Counties ⟨⟩204(1)—Mandamus ⟨⟩3(8)—
Duty of commissioners' court to audit accounts nondelegable, and mandamus will not lie to compel auditor to surrender duties to auditors appointed.**

Rev. St. art. 2241, § 8, empowering the commissioners' court to audit and settle all accounts against county and direct their payment, imposes a judicial duty on such court, and its performance is nondelegable, and does not support a claim that a writ of mandamus should issue against the county auditor to surrender his duties to auditors employed by such court and to approve a warrant drawn against the county's funds for the work performed by them, especially as section 1497 provides a definite and plain statutory remedy for incompetence and corruption.

**8. Counties ⟨⟩91—Commissioners' court cannot disregard duly appointed auditor and employ other auditors to perform auditor's duty.**

A commissioners' court does not possess the inherent constitutional and statutory right to disregard the duly appointed auditor and employ other auditors at the county's expense to explore the records of his office for the purpose of obtaining information which it is the duty of the county auditor to supply, in view of Rev. St. arts. 1460–1496, and Vernon's Ann. Civ. St. Supp. 1918, arts. 1461, 1462.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Mandamus by the County of Navarro to compel J. M. Tullos, County Auditor, and another to issue and countersign a warrant and to audit books. Judgment for defendants, and plaintiff appeals. Affirmed.

Richard Mays and R. E. Prince, both of Corsicana, for appellant.

Callicutt & Johnson and Nash & Lovett, all of Corsicana, and Ed. J. Gibson, of Dallas, for appellees.

HAMILTON, J. This is an appeal from a judgment of the trial court refusing to grant the writ of mandamus to require and compel C. M. Thornell, county clerk of Navarro county, Tex., to issue a warrant against the county treasurer and to compel J. M. Tullos, county auditor of said county, to countersign such warrant, and also to compel the latter to allow an audit of his books and accounts by a firm of auditors alleged to have been employed by appellant.

The petition for mandamus substantially alleges the following:

(1) That Navarro county, a body corporate and politic, is represented in the suit by its commissioners' court, the personnel of which is named in the petition, and that the respondents are sued in their respective official capacities as county auditor and county clerk of Navarro county.

(2) That under statutory authority the city of Corsicana, the county seat of Navarro county, and Navarro county in the past have established, built, and equipped conjointly and are at this time maintaining a hospital in the city of Corsicana, the funds for the support of which have heretofore been appropriated through the successive administrations of the commissioners' court of the county, and which is now maintained with funds appropriated by the commissioners' court of the county, which funds are derived from general taxation of the property belonging to citizens of the county, and that, while the hospital is supported and financed with appropriations made by the county, it is managed jointly by the city of Corsicana and the commissioners' court, as provided by law.

(3) That the hospital under the requirements of the statutes is subject to inspection by the commissioners' court of the county, and that upon demand each commissioner has the right of access to all books, papers, accounts, etc., pertaining to the hospital.

(4) That demand for such books, papers, accounts, etc., had been made upon the proper authorities of the hospital by the commissioners' court, and that the members of the court were informed that the books, papers, accounts, and records pertaining to the hospital had been destroyed by fire.

(5) That the hospital makes reports to the county auditor of the county, and funds appropriated for it are withdrawn from the treasury through warrants or vouchers presented to the county auditor for approval, and that, since the records pertaining to the hospital had been destroyed by fire, the only source of information available to the commissioners' court from which to ascertain the condition and management of the hospital and to be informed as to expenditures and disbursements of funds appropriated by the commissioners' court for it were under the control and management and in the custody of the respondent Tullos, county auditor of Navarro county.

(6) It is charged by relator that during some period in the past expenditures of the hospital had been excessive, illegal, unjust, and fraudulent, and that funds appropriated to the maintenance of the hospital had been diverted, mismanaged, and misapplied to the extent of $1,000 or more, and that relator is entitled to recover such sum of money from whatever persons may be liable therefor, but that relator is unable to say what the amount of such expenditures were or who is liable therefor until the commissioners' court can have an audit of the auditor's accounts allowed and paid out by former commissioners' courts and by former auditors, and that the only way this can be accomplished is by an audit of the books, papers, accounts, and reports of the hospital and the copies of abstracts in the office of the auditor and under the control of the present auditor; and it is alleged that such audit can be effected only

through private auditors employed for the purpose by the commissioners' court of Navarro county, and that the expense of such audit is a proper one to be incurred by the commissioners' court and a proper one to be paid out 'of the county's funds. The specific statutory authority and jurisdiction belonging to the commissioners' court of Navarro county over various county affairs are set out in detail.

(7) It was alleged that at some date in the past not specified the members of a board of road commissioners in Navarro county had some direct interest in certain contracts with the board for the repayment of $800 as attorney's fees paid by individual members of such board, for which relator was not responsible or liable, and that after such members of the road board had paid $800 attorney's fees they were reimbursed by appropriation of public funds derived from the finances of Navarro county.

(8) It was alleged that during the year 1919, a political year, $30,000 of public funds was expended in commissioners' precinct No. 2; that a considerable portion of this amount was improperly and illegally expended for. the purpose of influencing political action rather than for the public welfare, and that, in order that the county might know for what purpose such expenditures were made and in order to take proper action looking to a recovery, the commissioners' court had the right to examine all records pertaining to such transactions which were in the custody of respondent Tullos, and that, in view of the position taken by respondent, relator was unable to obtain such necessary information. In the same connection it was alleged that during the year 1921, and for three years previous thereto, W. E. Slaughter was auditor, and that he vacated his office on the 12th day of July, 1921, being then succeeded by the respondent Tullos; that S. Z. Burke was commissioner of precinct No. 2 of Navarro county from December 1, 1919, to December 1, 1920, and that Burke was a candidate for re-election as such commissioner; that he directed. such expenditures and that Slaughter, who was then auditor, was a relative of Burke's, and that Slaughter's bondsmen were also the relatives of both Burke and Slaughter, and that Slaughter before he retired from office refused to make any report to relator or to permit relator and its employés to audit and examine the expenditures with a view of ascertaining the true facts and determining who might be responsible therefor and against whom legal proceedings could be taken to enforce the return of the money such as might have been improperly and illegally expended; and it was alleged that such information was necessary in view of the fact that the relator is charged by law with the duty of protecting public funds.

(9) It was alleged that a certain road district in Navarro county principally situated in commissioners' precinct No. 2, and of which road board Burke was a member, voted bonds in the sum of $80,000, and that the road engineer of the district prior to July 1, 1921, after work had been done not exceeding in value $10,000, was unlawfully paid $2,400 out of the money of such road district in the early part of 1920, after which time the road engineer did no further work, but abandoned his employment and left the county, subsequent to which event two. persons named by relator were alleged to have assumed the right without the authority of the board to employ and pay another engineer to superintend improvements made in the road district. It is not alleged that these two men assumed to pay such engineer with public funds. It was also alleged that the engineer to whom the above-mentioned $2,-400 was made received. $1,200 under similar circumstances out of the funds of another road district, the warrants for which sum were signed by the auditor who preceded in office the respondent Tullos. In the same connection it was alleged that respondent Tullos is in possession of all records and information relating to such transactions, and without which relator is unable to ascertain where liability rests in order to enforce the return of such money as was unlawfully paid. to the engineer. In the same connection it was alleged that one John C. Beck was the principal bondsman of the respondent Tullos,. and that the engineer above mentioned was heavily indebted to a bank of which Beck is. president, and. that such engineer was socially or otherwise connected with Beck, who recommended and urged the appointment of such engineer; and it was alleged that relator believed such relation to be one of the reasons why respondent declined to permit relator to investigate the records of his office. It was alleged that, in order to obtain the facts relative to such transactions and similar ones not specifically named above, it was necessary for relator to examine the books and other records of respondent in order to ascertain where liability rests.

(10) It was alleged that the auditor's office does not correctly show the true facts. with relation to the county clerk's office, and that the administration of the clerk's office as to amounts collected, credit balances, and amounts received and paid over by the clerk to the county treasurer had been improperly kept by a previous auditor and had not been brought to the attention of the relator by the respondent or his predecessor in office, and that, in order to ascertain the true facts as. to the situation, the relator should be permitted, with the aid of expert accountants, to examine and inspect the books and records of the auditor's office. It is also alleged that respondent Tullos for several years im--

mediately preceding his appointment as county auditor was a deputy in the county clerk's office, and for this reason relator alleged that respondent refused to permit relator to examine and audit the books, records, and papers of his office through the experts, Pickett & De Witt.

(11) It was alleged that before the present auditor came into office his predecessor paid a fee of $2.10 to a justice of the peace for holding an examining trial, and thereafter tendered payment of the same item again to the justice of the peace, who refused to receive it, and that the payment was returned to the auditor, and no report of the transaction made.

(12) It was alleged that the auditor permitted large sums of money to remain in the hands of and to the credit of the tax collector in bank during certain periods, and that this deprived the county of interest on such sums which it would have received had the deposits been properly made as required by law in the county depository. It was not alleged that this occurred during the incumbency of the present auditor, nor is any other fact, intended to constitute the complaint this allegation involves, alleged with any certainty or definiteness but only in the most general and vague terms.

(13) Various duties and requirements are recited in the petition as being imposed upon the respondent Tullos by statute, and it is alleged that he and his predecessors in office have failed and refused to make certain reports to relator's commissioners' court with reference to extravagance, diversions, loss of books, etc., and that both respondent and his predecessor have failed to make such reports, and that such failure and refusal to make reports amount to illegally concealing from the relator and the commissioners' court the true condition and status of the county's finances.

(14) It was alleged that relator could not perform its duty of determining a tax rate and levying taxes without it could have an audit made by private auditors employed by it at the expense of the county, and that it could not discharge its legal function without the issuance of the mandamus. No facts were alleged in connection with the statement.

(15) The petition complains that under article 2241, R. S. Texas (which article, among other things, provides that commissioners' courts shall have power to audit and settle all accounts against the county and direct their payment), relator's commissioners' court, as it is now constituted, has not been permitted to audit the accounts of the county previously paid, and that the commissioners' court, as it is now constituted, has never directed the payment of funds charged to have been diverted. The allegation is made that after advertisements for competitive bids, and after all other legal prerequisites necessary to the making of a contract for an audit had been performed by the commissioners' court as it is now constituted, such commissioners' court made a contract with Pickett & De Witt, an auditing and public accounting firm, to audit the office of the respondent Tullos, and obligated itself to pay Pickett & De Witt $1,475 for such services, under the terms of which contract it became liable and bound to pay such auditors the sum of $40.50 for services performed; that Pickett & De Witt made out and rendered a true and just account for this amount, which was allowed by the commissioners' court, and which account was presented to the respondent Tullos and a voucher demanded for the same approved by the respondent, who refused, in defiance of the rights of the relator, to approve such account, and indorsed thereon, "Not approved; illegal;" and that after this occurrence relator drew a voucher in favor of Pickett & De Witt upon the county treasurer which was signed by the county judge of Navarro county under orders of the commissioners' court, which was presented to the auditor, the respondent herein, who again refused to approve it upon the ground that the commissioners' court had no legal right to make the contract for the audit of his office with Pickett & De Witt and pay therefor with county funds.

(16) It was further alleged that the respondent upon the demand of the commissioners' court, delivered to the commissioners and their auditors, Pickett & De Witt, the books, papers, accounts, and warrants of his office, which he thereafter withdrew from them at the end of one day's work, and by such act and his attitude of refusing to permit the privately employed auditors to audit his books, papers, etc., is illegally and fraudulently concealing from relator and its commissioners "evidence establishing irregularities, diversions, and fraudulent acts of the offices and officers of relator reporting to said auditor," etc.

A copy of the partial audit made by Pickett & De Witt under the employment alleged by relator is inserted in the petition, and certain discrepancies in the records of different county officers which are embodied in this report were alleged to have existed in fact; and it is further alleged that certain officers whose terms expired before respondent Tullos became auditor entirely failed to make any annual report, among whom was the county judge alleged to have vacated his office December 1, 1920. Various allegations were made against the county clerk because he refused to issue a voucher in payment of bill rendered by the privately employed auditors. Attached to and made a part of the petition is a resolution of the commissioners' court providing for the employment of auditors to

audit the books and records of the respondent Tullos.

The petition, the contents of which are substantially stated above, is extremely voluminous and indefinite. It was verified by the affidavit of each member of the commissioners' court of Navarro county.

The suit is pressed on this appeal only as to the rights asserted against Tullos, and it is not necessary to notice independently the allegations against Thornell, the clerk, since what we say with reference to the issue as to his co-respondent necessarily disposes of the entire case.

To the petition appellees interposed a general demurrer, and, at length and in detail, made specific allegations as to all the auditor's records contained bearing upon each matter concerning which complaint was made by appellant. The answer was verified. The general demurrer was sustained, and the application was dismissed.

From a judgment of this nature the appeal is prosecuted. Appellant's brief contains an argument, intensive and exhaustive, by which it is sought in effect to demonstrate that under constitutional and statutory provisions of law the commissioners' court possesses the right and authority to exclude the auditor from the control of his records, books, and various documents and papers, and put them in the possession of private persons to be audited in relation to various transactions of different county officers approved or acquiesced in by former commissioners' courts prior to the appointment of the auditor against whom the writ was sought, and without regard either to his capacity or integrity. The position appellant strives to maintain as we understand it, in its analysis, comes to this ultimate effect, and appellant argues from this premise, that it is entitled to the right of mandamus in order to compel the auditor to submit to an audit by the firm employed by the commissioners' court to make investigations with a view to ascertaining and fixing irregularities and illegalities in no way connected with the conduct of the auditor's office under the present incumbent, against whom the writ of mandamus is sought, but arising out of the alleged acts and defaults of county officers previously filling offices whose terms of office had already expired before the present county auditor assumed his office, and who had no participation in any of the acts complained of, but who merely, by official succession, holds the records as they were made and filed by his predecessor contemporaneously with the transactions and conduct made the basis of the grievances sought to be reflected in appellant's petition.

[1, 2] Mandamus being an extraordinary remedy employed only in those unusual cases where no other remedy exists, or in which, although other remedies may exist, they are inadequate and ineffectual, the writ will not go unless the party seeking it reveals to the court a clear and definite right to such relief. It is a necessary prerequisite to the issuance of it that the precise injury of which complaint is made cannot be relieved through the ordinary processes of redress. Unless such situation is substantially disclosed to the court, the writ will be denied. It is not altogether a writ of right, and, in any event, the withholding of it or the granting it is largely within the sound judicial discretion of the court, which discretion, although the process is a common-law one, is to be exercised upon principles of equity. Of course, it is not to be exercised arbitrarily, but under the rules of law, and, if the applicant brings the case clearly within the established rules of law, the court is without power to deny the writ.

[3] Under the above principles applied as a test to the case disclosed in the allegations made by appellant, we think the action of the trial court was correct. As before stated, the petition complains of transactions and official conduct of various officials of Navarro county in language which is general, vague, and indefinite so far as the effect of it tends to reveal facts of a nature actionable at law. The petition seems to us to abound in speculations and conclusions, but, granting that it does assert with sufficient definiteness wrongful and illegal acts on the part of officials of Navarro county who have heretofore held office, yet we do not think there can be derived from it allegations descriptive of any conduct on the part of appellee Tullos constituting failure to perform any official act required of him by law. That he is an officer is beyond dispute. That he has official duties and powers prescribed by law will not be questioned. Among the lawful duties and powers possessed by him is to exercise control and custody of the records, papers, etc., of his office, and to supply the commissioners' court such information concerning the affairs of the county as to enable that body properly and efficiently to discharge its duties. These functions he cannot be required by mandamus or otherwise to delegate to some person, or set of persons, arbitrarily selected by the commissioners' court. In other words, the commissioners' court may not deprive the duly constituted auditor of a county of the authority, right, and duties which inhere in his office and delegate them to some other person, or set of persons, merely for the purpose of investigating acts and transactions of different county officials who have gone before and whose official careers have expired. Stringer v. Franklin County, 58 Tex. Civ. App. 343, 123 S. W. 1169.

[4, 5] We think the petition utterly fails

to supply any specific foundation of facts alleged upon which either the efficiency or integrity of the auditor may be impeached. Nor is there any allegation of facts from which the conclusion is to be derived that the auditor through obstinacy, perversity, inaction, or for any reason refused or failed to supply to the commissioners' court any information to be obtained from the records of his office. In effect it is repeatedly said in the petition that the duties of the commissioners' court in supervising the affairs· of the county could not be performed without the audit by Pickett & De Witt and that the commissioners' court, in the exercise of its discretion, had determined the propriety of having such audit. It is also said in the petition that the conduct of the present auditor and that of his predecessor had rendered necessary the employment of Pickett & De Witt under the contract made, as revealed in the petition. But these statements are, in their nature, declarations · of conclusions rather than of facts, so far as they affect Tullos. They embody the expression of concepts we might suppose to be derived only from facts, a consideration of which results in their crystallization into the concepts thus expressed. They are, accordingly, only statements of conclusions rather than allegations of facts to be established by evidence. The facts to justify such conclusions do not appear in the petition.

[6] But, if it were conceded that the allegations of the petition were such as satisfactorily disclose failure or refusal on the part of Tullos to perform any lawful duty demanded by the commissioners' court, still this would afford no right to mandamus against him for the purposes sought. His failure to perform a duty demanded would not warrant the ·employment of other auditors by the commissioners' court and justify that body's temporarily suspending his control of his office. In such circumstances the right ·to the writ of mandamus against Tullos would arise in behalf of appellant to require him to supply to the commissioners' court such information as could lawfully be demanded of the auditor, but not to require of him the virtual surrender of his office and his official duties to outside accountants at the dictation of the commissioners' court.

[7] However, as already substantially said, no complaint is made that Tullos has refused to perform any duty laid upon him. On the contrary, appellant's. commissioners' court, having conceived the desirability of auditing his records through auditors of their own selection for the purpose of establishing, not his, but others', derelictions and malfeasances, supposed to have been committed before he assumed the office, attempts to compel him to surrender his duties to those auditors and approve the warrant drawn against the county's funds for the work so performed by them. . And for what definitely assigned reason? It is not alleged that the auditor has been requested to supply any information the records of his office contain, and which he has refused to supply, and thereby refused to perform a duty the law imposes upon him. It is not alleged that he has refused to allow the commissioners' court or any member of it to examine any record of this office. No facts disclosing dishonesty or incompetence are alleged. The allegation invoking reliance upon section 8 of article 2241, Rev. Civ. Stats., to justify the employment of Pickett & De Witt very clearly fails to afford any basis for the relief sought. That section of the article specifies that the commissioners' court has the power and duty "to audit and settle all accounts against the county and direct their payment." This provision imposes a judicial duty upon the commissioners' court, and its performance is nondelegable. Padgett v. Young (Tex. Civ. App.) 204 S. W. 1052. Such statute affords no support for the claim that a writ of mandamus should issue against Tullos to require of him the acts demanded by appellant.

If the allegations pointed definitely to explicit acts of incompetence and corruption on the part of appellee Tullos, which they fail to do, we think that even then the writ of mandamus ought not to be granted. In such circumstances there is a definite and plain statutory remedy provided. Article 1497, Rev. Civ. Stats. This statute was designed to cover, and we believe probably does cover, any contingency that could arise requiring, legally, relief against corruption or incapacity. Under this statute the district judge, by whom the auditor is selected, must pass upon his competency at any time it may be brought into question properly, and if there should be disclosed a necessity for the employment of accountants to enable the district judge to form a correct conclusion bearing upon the auditor's conduct, doubtless such an audit could be provided for; but, regardless of this, the record before us fundamentally fails to disclose a right to the particular character of relief sought.

If Tullos measures up to the requirements of the statute under which he obtained appointment, appellant could not in any event justify its course in employing Pickett & De Witt. If he falls short of such requirements, the law provides a specific means of relief. Such being the alternative, then, upon the principle that mandamus is not to be available when an ordinary or specific statutory remedy exists, the writ should not issue. 26 Cyc. 175.

[8] To sustain the attitude appellant presents would be, in our view, to ignore and override the statutory provisions creating the office of auditor and prescribing the duties

and authority of that office. Rev. Civ. Stats. arts. 1460–1496, inclusive. Also see articles 1461 and 1462, 1918, Supplement Rev. Civ. Stats. To refuse the writ is to respect and give effect to those provisions of law without, in any measure, impairing the lawful exercise of the power and authority of the commissioners' court granted by the Constitution and legislative enactment. The law providing for auditors and prescribing their duties, and necessarily corresponding rights, while it potently affects the commissioners' court in the exercise of its authority over county affairs, still leaves that authority in the commissioners' court to be exercised by it, but to be exercised in its relation to the auditor only along the course of procedure prescribed by the Legislature. This is true notwithstanding that commissioners' courts are constitutional courts endowed with prescribed jurisdiction. The commissioners' court, therefore, does not possess the inherent, constitutional or statutory right to disregard the duly appointed auditor and employ other auditors at the county's expense to explore the records of his office for the purpose of obtaining information it is the duty of the county auditor to supply.

Being of the opinion that the employment of Pickett & De Witt was contrary to law, and that the record discloses no right to any of the relief sought, we affirm the judgment of the court below.

Affirmed.