Ernest GUERRERO, Appellant,

v.

REFUGIO COUNTY, Texas, Charles Stone, Marion M. Lewis, Whayland K. Kilgore, and Joseph P. Kelly, Appellees.

No. 13–95–368–CV.

Court of Appeals of Texas,
Corpus Christi.

May 15, 1997.

Jose Garza, Gray & Becker, Tracey Whitley, Austin, for appellants.

Michael A. Johnson, Richard D. Cullen, Cullen, Carsner, Seerden & Cullen, Bob Bass, Allison & Associates, for appellee.

Before FREDERICO G. HINOJOSA, Jr., YAÑEZ and RODRIGUEZ, JJ.

## OPINION

FREDERICO G. HINOJOSA, Jr., Justice.

Appellant, Ernest Guerrero, sued appellees, Refugio County, Refugio County Judge Charles Stone, 135th District Court Judge Marion M. Lewis, 267th District Court Judge Whayland K. Kilgore, and 24th District Court Judge Joseph P. Kelly because he was not reappointed County Auditor of Refugio County. Guerrero alleged age, national origin, and politically motivated discrimination. Retired Judge Henry Schuble, III was specially appointed to hear the case.

All of the appellees filed motions for summary judgment. On July 29, 1995, Judge Schuble granted the motions filed by Judge Lewis, Judge Kilgore, and Judge Kelly. On August 12, 1995, Judge Schuble granted the motions filed by Judge Stone and Refugio County. Appellant challenges these summary judgments by eleven points of error. We reverse the trial court's summary judgments for Judge Lewis, Judge Kilgore, and Judge Kelly against Guerrero's 42 U.S.C. § 1983 claim for political discrimination and remand that cause of action to the trial court for further proceedings. We affirm the trial court's summary judgments for Judge Lewis, Judge Kilgore, and Judge Kelly against the remainder of Guerrero's causes of action. We affirm the trial court's summary judgments for Refugio County and Judge Stone.

Guerrero was appointed County Auditor of Refugio County by a majority of the district judges in Refugio County. *See* Tex. Loc. Gov't Code Ann. §§ 84.001(a), 84.002[1] (Vernon 1988). A county auditor serves a two-year term. Tex. Loc. Gov't Code Ann. § 84.004 (Vernon 1988). Guerrero was appointed county auditor eleven times and served for twenty-two years. He was last appointed in 1991, and his term of office ended in 1993.

Before 1993, the district judges did not seek other applicants, and Guerrero was reappointed based on his application for the position. In 1993, Judge Lewis received a letter from Judge Stone, dated July 15, 1993, suggesting that the district judges open the appointment process to other applicants because independent auditors had criticized Guerrero's auditing practices.[2] The district

---

1. At the time of the alleged discrimination, Refugio County had a population of less than 10,000 and was, therefore, governed by subsection (b) of this section. *See* Tex. Loc. Gov't Code Ann. § 84.002(b) (Vernon 1988).

2. Judge Stone's letter of July 15, 1993, states, in relevant part, as follows:

I am enclosing one copy each of the 1991 and 1992 management letters as per your request. The 1992 letter was formally presented

judges subsequently notified Guerrero that public notice was being given to open the appointment process to all applicants, and he was asked to reapply. The district judges received seventeen applications. Guerrero was one of the seventeen applicants. Guerrero and seven others were selected for an interview. After the interviews, Guerrero received a letter from Judge Lewis, dated December 10, 1993, informing him that another person had been appointed county auditor.[3]

Appellant then filed a complaint with the Texas Commission on Human Rights, charging Refugio County with age discrimination in the appointment process. Appellant later amended the complaint to include discrimina-tion because of national origin. Appellant is Mexican–American and was fifty-nine years old. The new appointee is not Hispanic and was thirty-eight years old.

After receiving a right to sue letter from the Texas Commission On Human Rights, Guerrero sued the County and the district judges. Guerrero alleged that appellees had violated the Texas Commission on Human Rights Act (TCHRA)[4] because they had discriminated against him on the basis of age and national origin. Guerrero alleged violations of 29 U.S.C. 621, et seq., and 42 U.S.C. 2000e, et seq. He also alleged that the district judges and the county judge, acting under the color of state law, deprived him of

---

3. Judge Lewis' letter of December 10, 1993, states as follows:

to the Commissioners' Court on Monday July 12, 1993.

I am sure you will notice that most of the offices that were given recommendations for needed change in 1991 had made those corrections and were not included in the 1992 letter. The three exceptions were: The J.P. Offices, Elderly Services (Nutrition) and the County Auditor's Office.

\* \* \* \* \* \*

The final office that has been written up two years in a row is the Auditor's Office. I have serious concerns that no response or attempt has been made by the auditor to follow the recommendations of the outside auditor. I am reluctant to instruct the auditor to comply with these findings since action on my part could possibly be perceived as undermining the "independence" of his office. Since the auditor's office is supposed to be free of all outside influence from the public including County Government, appropriate corrective measures should come from your office while in consultation with the other District Judges.

This Commissioner's Court wants an auditor that will be impartial, independent, capable and willing to perform the statutory duties and fulfill requirements of the position. It is my perception that the Commissioner's Court wants the position of auditor to be filled again at the next re-appointment date which should be October 11, 1993.

I hope that you and the other judges will consider opening the position up to other applicants that may be interested in applying while considering Mr. Guerrero's reappointment. In any case and no matter who is appointed, serious consideration should be given to incorporating the recommendations from the management letters and all applicable statutory requirements into the order appointing the next auditor for Refugio County.

On Friday, December 3, 1993, Judge Kilgore, Judge Kelly, and I personally interviewed the persons we considered to be the most qualified eight persons out of the seventeen applicants that asked to be considered for the position of County Auditor of Refugio County.

We have now made a most difficult decision. All persons interviewed had the basic qualifications. However, we were looking for a person who was not only qualified, but had additional attributes of independence, cooperativeness, dedication, and understanding of the political process in a rural county setting. While the three judges could agree on the three or four individuals, we believed to be the most suitable, we had to reach a consensus by some give and take among us to select the final appointee.

We have decided to appoint Russel W. (Rusty) Friedrichs, who presently resides in Goliad, Texas, as County Auditor with his two-year term to begin on January 3, 1994.

Ernest, we want to take this occasion to express our sincere thanks to you for your long and dedicated service. However, because of a number of different circumstances, some of which were beyond your control, we believe now is an appropriate time for you to step aside in favor of a younger and more aggressive person, with no ties to any particular political group or affiliation. We do appreciate the many courtesies you have extended us in the past, and your help in making Refugio County an efficiently run organization.

I am sure Mr. Friedrichs will be contacting you in the next few days. Please do whatever you can to make the transition of the duties of the office as smooth as possible.

Thank you for your cooperation in this regard.

4. Tex. Lab.Code Ann. § 21.001, et seq. (Vernon 1996).

property without due process as required by the U.S. Constitution and without due course of law as required by the Texas Constitution. Guerrero further alleged that, acting under the color of state law, the district judges and the county judge discriminated against him for political reasons, thereby depriving him of his free speech and associational rights in violation of the First and Fourteenth Amendments to the U.S. Constitution. He based these last claims on 42 U.S.C. § 1983.

All appellees moved for summary judgment on the ground that there was no employer/employee relationship between (1) Guerrero and the district judges or (2) Guerrero and the County. In addition, they alleged that Guerrero had no property interest in his position because he was appointed at the discretion of the district judges or, in the alternative, that he received due process when he was informed of the application process and was interviewed.

The district judges asserted that they had not discriminated against Guerrero, and that they had not violated section 21.051 of the TCHRA. They also claimed the affirmative defense of "failure to exhaust administrative remedies" because they were not identified as respondents in Guerrero's charge to the Texas Commission on Human Rights. The district judges contended that this failure deprived the trial court of jurisdiction because they had not received notice of the discrimination allegations prior to the commencement of the lawsuit. The district judges also asserted the affirmative defenses of "absolute judicial immunity" and "qualified immunity."

Judge Stone contended that his letter of July 15, 1993, was absolutely privileged, and that he was entitled to "qualified immunity." The County and the county judge asserted that the district judges had non-discriminatory reasons for not reappointing Guerrero and that the district judges were exercising their discretion as state actors. Thus, any harm to Guerrero as a result of exercising that discretion could not be attributed to the County or Judge Stone.

Without specifying the grounds, the trial court granted all of appellees' motions for summary judgment. Guerrero contends that the trial court erred in granting the motions for summary judgment.

## I. Standard of Review

When a defendant moves for summary judgment on several theories and the trial court enters summary judgment without specifying the ground relied upon, we affirm the summary judgment if any one of the theories advanced is meritorious. *Martinez v. Corpus Christi Area Teachers Credit Union,* 758 S.W.2d 946, 950 (Tex.App.—Corpus Christi 1988, writ denied). The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden to: 1) establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or 2) establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.*

A movant for summary judgment must expressly state the grounds upon which it is made. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Sch. Dist.,* 858 S.W.2d 337, 339 (Tex.1993); Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex. 1979); *Wofford v. Blomquist,* 865 S.W.2d 612, 614 (Tex.App.—Corpus Christi 1993, writ denied). A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *McConnell,* 858 S.W.2d at 339. For a trial court to properly enter a summary judgment for a defendant disposing of

the entire case, the defendant must present summary judgment evidence on all theories pleaded by the plaintiff. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

By eleven points of error, Guerrero contends that the trial court erred as follows:

1. In granting appellees' motions for summary judgment.

2. In determining that appellees are not "employers" as defined by the Texas Labor Code.

3. In determining that appellant was not an "employee" as defined by the Texas Labor Code.

4. In determining that the act of appointing a county auditor cannot constitute a discriminatory act as defined by the Texas Labor Code.

5. In determining that appellant was not entitled to a due process hearing.

6. In granting the district judges' motions for summary judgment when they presented no evidence disputing the allegations of non-renewal for political reasons.

7. In granting the district judges' motions for summary judgment when the evidence demonstrated that they received sufficient notice of appellant's claims.

8. In granting the district judges' motions for summary judgment because they are not entitled to absolute judicial immunity for administrative functions such as employment decisions.

9. In granting the district judges' motions for summary judgment because the elements of the affirmative defense of qualified immunity were not proven.

10. In granting the County's motion for summary judgment because the district judges were the County's agents when the district judges acted to employ a county auditor.

11. In granting the County's motion for summary judgment because the County failed to provide credible evidence regarding non-discriminatory justifications for appellant's non-renewal.

### II. Refugio County

■ Refugio County moved for summary judgment on the ground that appellant was not a County "employee" as defined by section 21.002 of the Texas Labor Code. Section 21.002 defines "employee" as "an individual employed by an employer, including an individual subject to the civil service laws of this state or a political subdivision of this state, except that the term [employee] does not include an individual elected to public office in this state or a political subdivision of this state." TEX. LAB.CODE ANN. § 21.002(7) (Vernon 1996).[5] Section 21.002 defines "employer" as "a county...." TEX. LAB.CODE

5. In 1993, the Legislature repealed article 5221k of the Texas Civil Statutes (Texas Commission on Human Rights Act) and codified it as chapter 21 of the Labor Code. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 990 (current version at TEX. LAB.CODE ANN. (Vernon 1996)). As codified, a person selected as an appointee by an elected official was excluded from the definition of "employee." *Id.* at 996. However, during the same legislative session, the Legislature amended the definition of "employee" found in art. 5221k without reference to the repeal and codification of the article. *See* Act of May 14, 1993, 73rd Leg., R.S., ch. 276, § 2, 1993 Tex. Gen. Laws 1287, 1287–88. The amendment of article 5221k does not exclude appointed persons from the definition of "employee." *Id.*

Section 311.031 of the Texas Government Code provides that the repeal of a statute by a code does not affect an amendment of the statute during the same legislative session as the statute was codified and that the amendment is to be given effect as part of the code. TEX. GOV'T CODE ANN. § 311.031(c) (Vernon 1988). The codification and amendment were effective September 1, 1993. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 8, 1993 Tex. Gen. Laws 1275. The alleged discrimination occurred in December 1993. Thus, the codification and the amendment are applicable to appellant, and we must give the amendment full effect.

During the 1995 regular session, the Legislature amended the definition of "employee" in § 21.001 of the Labor Code to conform with Chapter 276 of the 73rd Legislative Session. Act of April 25, 1995, 74th Leg., R.S., ch. 76, § 902, 1995 Tex. Sess. Law Serv. 458, 621–22 (Vernon) (current version at TEX. LAB.CODE ANN. § 21.002(7) (Vernon 1996)). Because the 1995 amendment made no substantive changes to the definition of "employee" found in Chapter 276, or to the other pertinent provisions of § 21.002, all references will be to the current version of that section.

ANN. § 21.002(8)(D) (Vernon 1996). Although the County can be an "employer" and appellant is not excluded from the definition of "employee" found in the Labor Code, we must first determine if the county auditor is a County employee. The Labor Code and Texas case law offer us little assistance in this determination.

■ The Legislature modeled the TCHRA on federal law with the purpose of (1) executing the policies embodied in Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e, *et seq.* and (2) identifying and creating an authority meeting the criteria under 42 U.S.C. § 2000e–5(c) and 29 U.S.C. § 633. TEX. LAB.CODE ANN. § 21.001 (Vernon 1996); *Benavides v. Moore,* 848 S.W.2d 190, 193 (Tex.App.—Corpus Christi 1992, writ denied). Consequently, when Texas case law fails to address questions raised under the TCHRA, we look to federal case law for guidance. *Benavides,* 848 S.W.2d at 193; *cf. Syndex Corp. v. Dean,* 820 S.W.2d 869, 871 (Tex.App.—Austin 1991, writ denied).

■ Before a defendant can be considered an employer for purposes of employment discrimination laws, it must pass the following two-prong test:

1) the defendant must fall within the statutory definition of employer, and
2) an employment relationship must exist between the parties.

*Deal v. State Farm County Mut. Ins. Co. of Tex.,* 5 F.3d 117, 118 n. 2 (5th Cir.1993). The TCHRA provides that the County can be an employer. *See* TEX. LAB.CODE ANN. § 21.002(8)(C) (Vernon 1996). Therefore, we must determine if the second prong of the test has been met.

■ In determining whether an employment relationship exists, federal courts use a hybrid economic realities/common law control test. *Deal,* 5 F.3d at 118–19; *Fields v. Hallsville Indep. Sch. Dist.,* 906 F.2d 1017, 1019 (5th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979); *Benavides,* 848 S.W.2d at 193. The most important part of this test is the right to control an employee's conduct. *Deal,* 5 F.3d at 119; *Fields,* 906 F.2d at 1019;

*see generally Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 750–51, 109 S.Ct. 2166, 2178, 104 L.Ed.2d 811 (1989)(setting forth test to be used in determining if hired person is employee). Under this component of the test, the focus is on whether the alleged employer has the right to hire and fire the employee, the right to determine the employee's schedule, and the right to supervise the employee's work. *Deal,* 5 F.3d at 119; *Fields,* 906 F.2d at 1020. The economic realities component of the test focuses on the following factors:

1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor;
2) the skill required in the particular occupation;
3) whether the "employer" or the individual in question furnishes the equipment used and the place of work;
4) the length of time during which the individual has worked;
5) the method of payment, whether by time or by the job;
6) the manner in which the work relationship is terminated; *i.e,* by one or both parties, with or without notice and explanation;
7) whether annual leave is afforded;
8) whether the work is an integral part of the business of the "employer";
9) whether the worker accumulates retirement benefits;
10) whether the "employer" pays social security taxes; and
11) the intention of the parties.

*Fields,* 906 F.2d at 1020 n. 4; *Spirides,* 613 F.2d at 832; *see also Deal,* 5 F.3d at 119; *see generally Reid,* 490 U.S. at 750–53, 109 S.Ct. at 2178–79; *Benavides,* 848 S.W.2d at 193 (using these factors to determine whether individual was employee or independent contractor).

■ We begin our analysis by reviewing the history of the creation of county government and of the county auditor's office. When county government was first created by the Texas Constitution of 1876, the judicial, executive, and legislative powers of the

county were vested in a single body called the commissioners court. *See* Burke Holman & James R. Gough, *A Study of County Government in Texas: With Particular Reference to Harris County*, 2 S. TEX. L.J. 197, 201 (1956). Before 1891, no judicial court had authority to review any acts of the commissioners court unless the acts were clearly outside its jurisdiction and thus void. *See id.* at 202. In 1891, however, the people approved a constitutional amendment granting district courts supervisory powers of review over the commissioners courts within their jurisdictions. *See id.* In the early 1900's, the office of the county auditor was created by statute to maintain the accounts of the various county offices and to oversee the county finances. *See* Act of April 22, 1905, 29th Leg., R.S., ch. 161, § 2, 1905 Tex. Gen. Laws 381, 381 (current version at TEX. LOCAL GOV'T CODE ANN. § 84.002). Initially, the auditor was appointed by the county and district judges having jurisdiction in the county. *Id.* The Legislature subsequently amended the statute to provide for the appointment of the county auditor by only the district judges. Act of March 29, 1917, 35th Leg., R.S., ch. 134, §§ 2, 3, 1917 Tex. Gen. Laws 337, 338 (current version at TEX. LOCAL GOV'T CODE ANN. § 84.002). The auditor is not appointed by any elected body or officer who administers or determines county policy and is to be left entirely free from the control of these officers. *See Weaver v. Commissioners' Court of Nacogdoches County*, 135 Tex. 611, 146 S.W.2d 170, 174 (1941); *see also* Burke Holman & James R. Gough, *A Study of County Government in Texas— Evaluation of the Office of County Auditor*, 3 S. TEX. L.J. 1, 1 (1957).

After reviewing the record, we conclude that the County's relationship with the county auditor does not satisfy the common law control component of the economic realities/common law control test. Statutory authority to appoint or remove the county auditor is vested in the district judges. Even the decision whether to have a county auditor in Refugio County rests with the district judges and not the County. TEX. LOCAL GOV'T CODE ANN. §§ 84.002(b), 84.009(b) (Vernon 1988). Although the County, through Judge Stone, suggested to the district judges that they open the appointment process to other applicants because independent auditors had criticized Guerrero's auditing practices, we find nothing in the statutes or the record indicating that any county official or agent controlled, or had the right to control, the decision of the district judges to not reappoint Guerrero. In addition, we find uncontroverted evidence in the record showing that the County did not control Guerrero's work schedule or supervise his work and that Guerrero had the power to determine and control the County's accounting procedures. In fact, as county auditor, Guerrero had to examine and approve all claims, bills, and accounts before the County could pay them. TEX. LOCAL GOV'T CODE ANN. § 113.064(a) (Vernon 1988).

Several of the economic realities factors also do not weigh in Guerrero's favor. Although the County was responsible for paying the salary and social security taxes of Guerrero and his assistants, it was the district judges who set the salary and determined if appellant needed assistants. TEX. LOCAL GOV'T CODE ANN. §§ 84.021(a) (Vernon 1988), 152.031(a) (Vernon Supp.1997). The fact that the County provided Guerrero with an office, equipment, and supplies is not dispositive concerning whether there was an employment relationship. As the county auditor, Guerrero had the statutory authority to equip and supply his office, at county expense, as long as he complied with the law. TEX. LOCAL GOV'T CODE ANN. § 84.901 (Vernon 1988). The County could only disapprove of Guerrero's purchases if they were excessive or an unreasonable demand on the county's funds. *See Commissioners Court of Harris County v. Fullerton*, 596 S.W.2d 572, 577 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). County disapproval, however, is subject to review under an abuse of discretion standard. *See id.* The record also shows that Guerrero could go to the district judges to override any unfavorable County decision concerning his expenses. To qualify for the position of auditor, Guerrero had to have experience in accounting and auditing and be thoroughly competent in public business details. *See* TEX. LOCAL GOV'T CODE ANN. § 84.006(a) (Vernon Supp.

1997). The evidence shows that these skills are important because the auditor maintains accounting procedures without supervision from the County. Finally, the County asserts, and we agree, that it would indeed be strange to have an "employee" exercise such control over an employer's finances as a county auditor does over a county's fiscal matters.

Because the County does not have the requisite right of control over the county auditor and because the economic realities of the case do not support a finding that an employment relationship existed, we hold that Guerrero was not a County employee. We overrule appellant's first, second, third and fourth points of error as they apply to Refugio County.

By his tenth point of error, Guerrero contends that summary judgment for Refugio County was not proper because the district judges were agents of the County when they appointed the county auditor.

An official pursues his duties as a state agent when he is enforcing state law or state policy. *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir.1990). He is a county agent when he enforces county policy or law. *Id.* When the district judges appointed the county auditor, the judges were fulfilling a duty that was imposed on them by the state legislature. *See* TEX. LOCAL GOV'T CODE ANN. § 84.002; *Weaver*, 146 S.W.2d at 174. When the appointment process was amended in 1917 to exclude the involvement of county judges, *see* Act of March 29, 1917, 35th Leg., R.S., ch. 134, §§ 2, 3, 1917 Tex. Gen. Laws 337, 338, the legislature clearly intended that counties have no voice in the selection of county auditors. This is evidenced by the fact that county judges do share appointment powers with district judges for other positions, such as the appointment of county purchasing agents. *See* TEX. LOCAL GOV'T CODE ANN. § 262.011(a) (Vernon Supp.1997). In addition, the State, and not the County, has determined the qualifications a person must have to become a county auditor. TEX. LOCAL GOV'T CODE ANN. § 84.006.

Because the district judges were acting pursuant to state policy, and not county poli-

cy, we hold that they were not agents of the County when they appointed the county auditor. We overrule appellant's tenth point of error.

Because we have held that Refugio County was not Guerrero's employer and that the district judges were not agents of Refugio County when they appointed the county auditor, we overrule appellant's eleventh point of error. Therefore, we hold that the trial court did not err in granting Refugio County's motion for summary judgment.

### III.  The District Judges

District Court Judges Lewis, Kilgore, and Kelly moved for summary judgment on the ground that they were not Guerrero's employers as defined in section 21.002 of the TCHRA. Appellant contends that summary judgment should not have been granted on this ground because section 21.002 specifically states that elected officials, such as district judges, are employers.

Guerrero is correct that the district judges fall within the statutory definition of "employer." However, that alone is not enough. *See Deal*, 5 F.3d at 118 n. 2. An employment relationship must exist between appellant and the judges. *See id.* We, therefore, look again to the hybrid economic realities/common law control test for guidance in determining whether such a relationship exists. *See id; Benavides*, 848 S.W.2d at 193.

As we previously stated, the most important part of the economic realities/common law control test is the right to control an employee's conduct. *Deal*, 5 F.3d at 119; *Fields*, 906 F.2d at 1019. Pursuant to state law, district judges must appoint a county auditor when the need for such a function arises. *See* TEX. LOCAL GOV'T CODE ANN. § 84.002. The judges also decide whether the county auditor is entitled to assistant auditors and approve the persons appointed to those positions. TEX. LOCAL GOV'T CODE ANN. § 84.021. In addition, the judges have the authority to remove a county auditor from office when an investigation shows that he has committed official misconduct or is incompetent to discharge the requisite duties. *See* TEX. LOCAL GOV'T CODE ANN. § 84.009. Other than these statutorily imposed duties,

the district judges have little control over the office of county auditor.

The duties of the county auditor are prescribed in the Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. ch. 111–115 (Vernon 1988 & Supp.1997). The district judges have no authority to determine who or what is audited, how the auditing functions are to be handled, or when the audits are to be conducted. Only when a county auditor fails to properly discharge these requisite duties, may the district judges determine whether to remove him from office. Thus, as a matter of law, district judges have a limited right to control the county auditor by their appointment and removal powers only.

The economic realities component of the test looks at the economic realities of the relationship. In this case, many of the economic realities are controlled by state law. For instance, state law provides that the county auditor's salary must be set by the district judges and paid by the county. *See* TEX. LOCAL GOV'T CODE ANN. § 152.031. The auditor's supplies are provided at the county's expense. *See* TEX. LOCAL GOV'T CODE ANN. § 84.901. By law, the county auditor adopts and enforces the regulations necessary for a proper accounting system in the county. *See* TEX. LOCAL GOV'T CODE ANN. §§ 112.001, 114.002 (Vernon 1988). Once appointed to the position, the county auditor is entitled to serve for two years, unless the office is discontinued or the auditor is removed for cause. *See* TEX. LOCAL GOV'T.CODE ANN. §§ 84.004, 84.009. Moreover, a review of the auditor's duties, as specified by statute, shows that the auditor's work is not an integral part of the business of the district judges. We, therefore, conclude that the economic realities in this instance do not favor a finding of an employment relationship between the district judges and the county auditor.

Having found that the district judges have limited right to control the county auditor and that the economic realities disfavor an employment relationship, we hold that the district judges were not Guerrero's employers under the TCHRA. Therefore, the trial court did not err in granting the district judges' motions for summary judgment on Guerrero's age and national origin discrimination claims. We overrule Guerrero's second, third, fourth, and seventh points of error as they relate to the district judges.

### IV. Property Interest

■ Appellant alleged that the district judges and the county judge, acting under the color of law, deprived him of a property interest in the position of county auditor without due process. All four judges moved for summary judgment claiming that as a public official, Guerrero did not have a property interest in the position and was not entitled to due process.

■ Public office is a "right, authority, and duty created and conferred by law which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign function of the government to be exercised by him for the benefit of the public." *Tarrant County v. Ashmore*, 635 S.W.2d 417, 420 (Tex.) (quoting *Kimbrough v. Barnett*, 93 Tex. 301, 310, 55 S.W. 120, 122 (1900)), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982); *Ruiz v. State*, 540 S.W.2d 809, 812 (Tex.Civ. App.—Corpus Christi 1976, no writ). Public office can be properly described in terms of trust, duty, and public benefit, rather than contract, employment, ownership, or possession. *Ashmore*, 635 S.W.2d at 420. Stated briefly, public office should be viewed not as a right, but a responsibility. *Id.* Every public officeholder remains in his position at the sufferance and for the benefit of the public, subject to removal from office by any constitutionally prescribed method. *Id.* at 421. "An officer has no vested right in the office held by him, and thus cannot complain of an abolishment of such office or of his removal or suspension, according to law[.]" *Id.* at 422 (quoting *Sutton v. Adams*, 180 Ga. 48, 178 S.E. 365, 375 (1934)).

■ "The determining factor which distinguishes a public officer from an employee is whether any sovereign function of the government is conferred upon the individual to be exercised by him for the benefit of the

public largely independent of the control of others." *Aldine Indep. Sch. Dist. v. Standley,* 154 Tex. 547, 280 S.W.2d 578, 583 (1955) (quoting *Dunbar v. Brazoria County,* 224 S.W.2d 738, 740 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.)); *Ruiz,* 540 S.W.2d at 811. Other factors to consider include a fixed term of office, removal provisions, and qualifications for holding the position, all of which are prescribed by statute. *See Standley,* 280 S.W.2d at 581. In addition, an officer will be required by law to take an oath of office and to give a bond. *See id.*

In the instant case, Guerrero held an appointed position with a statutorily prescribed term of two years. *See* Tex. Local Gov't Code Ann. § 84.004. The Refugio County Auditor is appointed at the discretion of the district judges who may abolish the office one year after an appointment, or remove the auditor from office for cause. *See* Tex. Local Gov't Code Ann. §§ 84.002, 84.009. Statutory qualifications exist for the position, and the person appointed must take an oath of office as well as give a bond. *See* Tex. Local Gov't Code Ann. §§ 84.006, 84.007 (Vernon 1988).

■ Most significant, however, are the sovereign functions conferred upon the county auditor. The auditor:

1) may adopt and enforce regulations, consistent with the law, necessary for the proper and speedy collecting, checking, and accounting of the revenues, funds, and fees of the county. Tex. Local Gov't Code Ann. § 112.001;

2) shall maintain an account for each county, district, or state officer authorized or required by law to receive or collect money or other property intended for use by or that belongs to the county. Tex. Local Gov't Code Ann. § 112.005 (Vernon 1988);

3) must countersign a check or warrant to validate it as a proper and budgeted item of expenditure. Tex. Local Gov't Code Ann. § 113.043 (Vernon 1988);

4) must examine and approve each claim, bill, and account against the county before they can be allowed or paid, and such approval may not be given unless the claim was incurred as provided by law. Tex. Local Gov't Code Ann. §§ . 113.064, 113.065 (Vernon 1988);

5) shall determine the time and manner for making reports to the auditor, and any person required to make such a report, who intentionally refuses to comply with a reasonable request, commits a misdemeanor. Tex. Local Gov't Code Ann. §§ 114.002, 114.003 (Vernon 1988); and

6) shall see to the strict enforcement of the law governing county finances. Tex. Local Gov't Code Ann. § 112.006(b) (Vernon 1988).

As county auditor, Guerrero could not delegate these official duties to another, other than to duly appointed assistants. *Fullerton,* 596 S.W.2d at 578. Nor could he be compelled to delegate these duties. *See id.* (quoting *Navarro County v. Tullos,* 237 S.W. 982, 986 (Tex.Civ.App.—Dallas 1922, writ ref'd n.r.e.)).

■ When acting as county auditor, Guerrero was not subject to the orders of the commissioners court. *See* Op. Tex. Att'y Gen. No. JM–911 (1988) (citing Op. Tex. Att'y Gen. No. O–5049 (1943)). As county auditor, Guerrero had broad powers to oversee county finances and prescribe systems for the accountability of county funds. *See id.* The independent nature of Guerrero's position was assured by placing the power of appointment and dismissal in the hands of the district judges. *See id.*

■ For these reasons, we hold that Guerrero was a public official who did not have a property interest in his position beyond the end of the last two-year term to which he was appointed. *See Tarrant County,* 635 S.W.2d at 422 (public official has property interest that may be protected from unlawful interference with possession and conduct of such office during official's incumbency). The record reflects that Guerrero completed his eleventh two-year term before the new auditor assumed office. Lacking a complaint about unlawful interference during his incumbency, Guerrero had no property interest in his position. *See id.* The requirements of procedural due process apply only to the threatened deprivation of proper-

ty interests requiring protection of the federal and state constitutions. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Tarrant County,* 635 S.W.2d at 422.

Because we have held that Guerrero did not have a property interest in his position beyond the end of his eleventh two-year term, Guerrero was not entitled to procedural due process when the district judges decided to open the appointment process to other applicants. We hold that the trial court did not err in granting all four judges' motions for summary judgment on this issue. We overrule Guerrero's fifth point of error.

## V. Political Discrimination

### A. The *County Judge*

▌ Relying on 42 U.S.C. § 1983, Guerrero alleged that the county judge, for political reasons, had urged that he not be reappointed, thereby acting under color of law to deprive him of his First and Fourteenth Amendment rights. Guerrero contended that the county judge's letter of July 15, 1993 to the district judges prevented his reappointment. Specifically, appellant complained of the following sentence:

> This Commissioners Court wants an auditor that will be impartial, independent, capable and willing to perform the statutory duties and fulfill requirements of the position.

Guerrero claimed that this sentence showed that Judge Stone was biased against him for political reasons. Guerrero's § 1983 claim was made even though, by law, Judge Stone had no role in the appointment process.

▌ To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the following two elements: 1) that he was deprived of a right or interest secured by the Constitution and laws of the United States, and 2) that the deprivation occurred under color of state law. *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir.1995); *see West v. Atkins,* 487 U.S. 42, 46–48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). A person does not act under color of state law solely by virtue of a relationship to the state; but depending on the person's function. *Rains*

*County I.S.D.,* 66 F.3d at 1411; *see Polk County v. Dodson,* 454 U.S. 312, 318–20, 102 S.Ct. 445, 450, 70 L.Ed.2d 509 (1981). Regardless of one's affiliation with the state, "a person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Rains County I.S.D.,* 66 F.3d at 1411 (quoting *Polk County,* 454 U.S. at 317–18, 102 S.Ct. at 449). If state law has imposed a duty to report, investigate, monitor, or regulate without granting a duty to exercise state-conferred legal control over the underlying persons or events, there is no conduit through which an exercise of state power can be said to have caused the constitutional injury. *Id.* at 1416.

The county commissioners court, with the county judge as presiding officer, exercises power and jurisdiction over all county business, as prescribed by state law. TEX. CONST. art. 5, § 18. Maintaining finance records and examining accounting records of the county are among the functions of the commissioners court. TEX. LOCAL GOV'T CODE ANN. §§ 112.008, 115.022 (Vernon 1988). In order to fulfill these functions, the commissioners court may authorize an independent audit of the accounts and officials if the audit would best serve the public interest. *See* TEX. LOCAL GOV'T CODE ANN. § 115.031 (Vernon 1988). This audit can include the office of the county auditor. *Id.*

In the instant case, the county judge and commissioners of Refugio County determined at the end of 1991 and again at the end of 1992 that an independent audit of all county officials was necessary. At the time of each audit, the accountants also performed an investigation and evaluation of the county's system of internal accounting control. Neil Snedeker, the certified public account who conducted the audits, submitted the results of these studies in the form of management letters. These management letters were presented to the commissioners court, and appellant received a copy. According to the 1991 letter, many county offices, most notably that of the county auditor, were deficient in accounting procedures.

In July 1993, the county judge sent copies of the management letters to the district judges for their review. In addition, Judge Stone sent his July 15, 1993 letter, expressing concern with Guerrero's accounting practices. Judge Stone noted that the management letters indicated that Guerrero was not performing his statutory duties and not following accepted accounting procedures. Judge Stone pointed out that the 1992 management letter indicated that Guerrero had apparently not attempted to correct the shortcomings noted in the 1991 management letter. Judge Stone then explained his reluctance to address the issue with the county auditor because the position was supposed to be free of all outside influence and because Judge Stone felt corrective measures were better left to the district judges. Judge Stone informed the district judges that the county commissioners court wanted to continue the auditor's position, and asked the district judges to consider opening the position to other applicants when Guerrero's term expired.

In authorizing the audit, the commissioners court was investigating facts concerning county financial procedures, and Judge Stone's letter informed the district judges of that investigation. However, once the letter was written, Judge Stone had no state-conferred legal control over how the district judges addressed the issues raised by the letter. The summary judgment evidence established that, as a matter of law, Judge Stone had no legal control over or duty to be involved in the process of appointing the county auditor. Instead, appointing a county auditor falls within the discretionary duties of the district court judges of that county. As such, those judges could decide who to appoint as auditor, to remove a person from that office, or to eliminate the position entirely, whether this met with the approval of county officials or not. Even if Judge Stone's letter was interpreted as politically motivated, without state-conferred legal control, Judge Stone could not be liable under § 1983. Thus, Guerrero has failed to establish an element of his cause of action, namely that the judge was acting under color of state law. Accordingly, we hold that the trial court did not err in granting Judge Stone's

motion for summary judgment on Guerrero's § 1983 claim. We overrule Guerrero's first and ninth points of error as they relate to Judge Stone.

### B. The *District Judges*

■ Guerrero also asserted a § 1983 claim for political discrimination against the district judges.

It is well-settled that a motion for summary judgment must expressly state the grounds upon which it is made. *McConnell,* 858 S.W.2d at 339; Tex.R. Civ. P. 166a(c). Summary judgments may not be affirmed or reversed on grounds not expressly set forth in the motions presented to the trial court. *Clear Creek Basin Auth.,* 589 S.W.2d at 677; *Wofford,* 865 S.W.2d at 614. A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, and a court may not rely on briefs or summary judgment evidence in determining whether grounds are expressly presented. *McConnell,* 858 S.W.2d at 339.

After reviewing the record, we find that the district judges did not address Guerrero's § 1983 claim for political discrimination in their motions for summary judgment. We find, however, that the district judges asserted the affirmative defenses of "absolute judicial immunity" and "qualified immunity" in their motions for summary judgment.

■ Judges enjoy absolute immunity from damage claims arising out of acts performed in the exercise of their judicial functions even if acting in bad faith or with malice. *Garza v. Morales,* 923 S.W.2d 800, 802 (Tex.App.—Corpus Christi 1996, n.w.h.); *Spencer v. City of Seagoville,* 700 S.W.2d 953, 957–58 (Tex.App.—Dallas 1985, no writ); *Morris v. Nowotny,* 323 S.W.2d 301, 304 (Tex.Civ.App.—Austin, writ ref'd n.r.e.), *cert. denied,* 361 U.S. 889, 80 S.Ct. 164, 4 L.Ed.2d 124 (1959).

However, the U.S. Supreme Court has held that in civil rights cases, absolute judicial immunity applies only when a judge acts in a judicial capacity. *Forrester v. White,* 484 U.S. 219, 228–30, 108 S.Ct. 538, 544–46, 98 L.Ed.2d 555 (1988). In *Forrester,* the

Court held that the termination of a probation officer by a judge was an administrative act, and not a judicial act. *Id.* Because Judges Lewis, Kilgore, and Kelly were not acting in a judicial capacity, we conclude that they cannot assert the affirmative defense of absolute judicial immunity against Guerrero's § 1983 claim for political discrimination.

Government officers also have a common law immunity from personal liability in performing discretionary duties performed in good faith within the scope of their authority. *Garza v. Smith*, 860 S.W.2d 631, 633 (Tex.App.—Corpus Christi 1993, no writ); *Eakle v. Texas Dep't of Human Serv.*, 815 S.W.2d 869, 875 (Tex.App.—Austin 1991, writ denied); *Russell v. Texas Dep't of Human Resources*, 746 S.W.2d 510, 513 (Tex.App.—Texarkana 1988, writ denied). This immunity is known as qualified, official, quasi-judicial, or good faith immunity. *Garza*, 860 S.W.2d at 633; *see City of Houston v. Kilburn*, 849 S.W.2d 810, 812 n. 1 (Tex.1993). Quasi-judicial immunity is an affirmative defense, and a movant for summary judgment has the burden to come forward with evidence to establish each element of the defense. *Garza*, 860 S.W.2d at 634. To prevail, the district judges had to establish: 1) that their positions had quasi-judicial status, 2) that they were acting within their authority, and 3) that they were acting in good faith. *Eakle*, 815 S.W.2d at 875.

Even if we were to assume that the district judges proved the first two elements, we conclude that they did not establish the good faith element. The only evidence we find in the record on the issue of good faith is contained in the judges sworn affidavits. Although the affidavits state that the judges sole concern was the appointment of the best possible person and that age, race, gender, and disability were not considered, the affidavits do not address Guerrero's political discrimination claim. Moreover, the test for good faith is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith. *Gallia v. Schreiber*, 907 S.W.2d 864, 869 (Tex.App.—Houston [1st Dist.] 1995, no writ); *see City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994).

To be entitled to summary judgment, a government official must prove that a reasonably prudent official might have believed that the action taken was appropriate. *Gallia*, 907 S.W.2d at 869; *see Chambers*, 883 S.W.2d at 656–57. The official does not have to prove that it would have been unreasonable to take a different action; nor must the official prove that all reasonably prudent officials would have acted as he did. *Gallia*, 907 S.W.2d at 869; *see Chambers*, 883 S.W.2d at 656–57. The district judges offered no evidence that could lead us to conclude that reasonably prudent judges would believe their actions were appropriate.

Because the district judges did not address Guerrero's § 1983 claim for political discrimination and because they did not establish that they are entitled to immunity, we hold that the trial court erred in granting the district judges' motions for summary judgment against Guerrero's § 1983 claim for political discrimination. *See Havens*, 793 S.W.2d at 691. We sustain Guerrero's first, sixth, eighth, and ninth points of error as they relate to the district judges.

We reverse the trial court's summary judgments for Judge Lewis, Judge Kilgore, and Judge Kelly against Guerrero's § 1983 claim for political discrimination and remand that cause of action to the trial court for further proceedings. We affirm the trial court's summary judgments for Judge Lewis, Judge Kilgore, and Judge Kelly against the remainder of Guerrero's causes of action. We affirm the trial court's summary judgments for Refugio County and Judge Stone.